Slip Op 19 - 85

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| KENT INTERNATIONAL, INC., | |
| Plaintiff, | Before: Leo M. Gordon, Judge |
| v. | Court No. 15-00135 |
| UNITED STATES, | |
| Defendant. | |

**OPINION and ORDER**

[Plaintiff's motion for partial summary judgment denied; Defendant's motion for partial summary judgment granted.]

Dated: July 9, 2019

Philip Yale Simons and Jerry P. Wiskin, Simons & Wiskin of South Amboy, NJ for Plaintiff Kent International, Inc.

Monica P. Triana, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, for Defendant United States. With her on the brief were Joseph H. Hunt, Assistant Attorney General, Amy M. Rubin, Assistant Director. Of counsel on the brief was Yelena Slepak, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection of New York, NY.

Gordon, Judge: Plaintiff Kent International, Inc. ("Kent") challenges the classification by U.S. Customs and Border Protection ("Customs") of Kent's entries of the imported "WeeRide Kangaroo Ltd. Center-Mounted Bicycle-Child Carrier" ("WeeRide Carrier" or "subject merchandise") under the Harmonized Tariff Schedule of the United States ("HTSUS"). Before the court are cross-motions for summary judgment. See Pl.'s Mot. for Partial Summ. J., ECF No. 37 ("Pl.'s Br."); Def.'s Cross-Mot. for Partial Summ. J. and Opp. to Pl.'s Mot. for Partial Summ. J., ECF No. 38 ("Def.'s Br."); see also Pl.'s Resp. to Def.'s Cross-Mot. for Partial Summ. J., ECF No. 41 ("Pl.'s Resp."); Def.'s Reply in Supp.

of Cross-Mot. for Partial Summ. J., ECF No. 42 ("Def.'s Reply"). Customs classified the

subject merchandise as "Parts and accessories of vehicles of heading 8711 to 8713: . . .

Other: . . . Other" under HTSUS subheading 8714.99.80, at a 10% duty rate. Plaintiff

claims that the subject merchandise is properly classified as "Seats (other than those

of heading 9402), whether or not convertible into beds, and parts thereof: … Other seats:

Of rubber or plastics: … Other" under HTSUS subheading 9401.80.40, at a 0% duty rate.

The court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (2012). For the reasons set

forth below, Plaintiff's motion for partial summary judgment is denied, and Defendant's

cross-motion for partial summary judgment is granted.

## I.      Undisputed Facts

The following facts are not in dispute. See generally Plaintiff's Statement

of Material Facts Not in Dispute, ECF 37-1 ("Pl.'s Facts Stmt."); Defendant's Response

to Plaintiff's Statement of Material Facts, ECF 38-3 ("Def.'s Resp. to Facts"); Defendant's

Statement of Undisputed Material Facts, ECF 38-2 ("Def.'s Facts Stmt."); Plaintiff's

Response to Defendant's Statement of Undisputed Material Facts, ECF 41-1 ("Pl.'s Resp.

to Facts"). The merchandise at issue is Plaintiff's WeeRide Carrier. Def.'s Facts Stmt. ¶

1; Pl.'s Resp. to Facts at 1. The sole purpose of the WeeRide Carrier is to allow a child

to ride on an adult's bicycle, situated between the adult seat and the front handlebars.

Def.'s Facts Stmt. ¶¶ 2–3; Pl.'s Resp. to Facts at 2–3. The WeeRide Carrier attaches to a

bicycle via a supporting bar, which is attached to the handlebar and seat post of an adult

bicycle.  Pl.'s Facts Stmt. ¶ 5; Def.'s Facts Stmt. ¶ 6; Def.'s Resp. to Facts at 2. Plaintiff's

website identifies the WeeRide Carrier as an "accessory."  Def.'s Facts Stmt. ¶ 21; Pl.'s Resp. to Facts at 6.

## II.    Standard of Review

The court reviews Customs' protest decisions de novo. 28 U.S.C. § 2640(a)(1). USCIT Rule 56 permits summary judgment when "there is no genuine issue as to any material fact." USCIT R. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). In considering whether material facts are in dispute, the evidence must be considered in the light most favorable to the non-moving party, drawing all reasonable inferences in its favor. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Anderson, 477 U.S. at 261 n.2.

A classification decision involves two steps. The first step addresses the proper meaning of the relevant tariff provisions, which is a question of law. See Faus Group, Inc. v. United States, 581 F.3d 1369, 1371–72 (Fed. Cir. 2009) (citing Orlando Food Corp. v. United States, 140 F.3d 1437, 1439 (Fed. Cir. 1998)). The second step involves determining whether the merchandise at issue falls within a particular tariff provision as construed, which, when disputed, is a question of fact. Id.

When there is no factual dispute regarding the merchandise, the resolution of the classification issue turns on the first step, determining the proper meaning and scope of the relevant tariff provisions. See Carl Zeiss, Inc. v. United States, 195 F.3d 1375, 1378 (Fed. Cir. 1999); Bausch & Lomb, Inc. v. United States, 148 F.3d 1363, 1365–66 (Fed. Cir. 1998). This is such a case, and summary judgment is appropriate. See Bausch & Lomb, 148 F.3d at 1365–66.

### III.    Discussion

Classification disputes under the HTSUS are resolved by reference to the General Rules of Interpretation ("GRIs") and the Additional U.S. Rules of Interpretation. See Carl Zeiss, 195 F.3d at 1379. The GRIs are applied in numerical order. Id. Interpretation of the HTSUS begins with the language of the tariff headings, subheadings, their section and chapter notes, and may also be aided by the Explanatory Notes ("ENs") published by the World Customs Organization. Id. Under GRI 1, classification is determined by "the terms of the headings and any relevant section or chapter notes." Avenues in Leather, Inc. v. United States, 423 F.3d 1326, 1333 (Fed. Cir. 2005). The HTSUS section and chapter notes "are not optional interpretive rules, but are statutory law . . . ." Id. "GRI 1 is paramount. . . . The HTSUS is designed so that most classification questions can be answered by GRI 1 . . . . The headings and relevant notes are to be exhausted before inquiries, such as those of GRI 3, are considered . . . ." Telebrands Corp. v. United States, 36 CIT ___, ___, 865 F. Supp. 2d 1277, 1280 (2012).

Under GRI 1, merchandise that is described "in whole by a single classification heading or subheading" is classifiable under that heading or subheading. CamelBak Prods. LLC v. United States, 649 F.3d 1361, 1364 (Fed. Cir. 2011). If that single classification applies, the succeeding GRIs are inoperative. Mita Copystar Am. v. United States, 160 F.3d 710, 712 (Fed. Cir. 1998).

The court construes a tariff term according to its common and commercial meanings, and may rely on lexicographic authorities and its own understanding of the term. See Len-Ron Mfg. Co. v. United States, 334 F.3d 1304, 1309 (Fed. Cir. 2003).

The court may also refer to ENs "accompanying a tariff subheading, which – although not controlling – provide interpretive guidance." E.T. Horn Co. v. United States, 367 F.3d 1326, 1329 (Fed. Cir. 2004) (citing Len-Ron, 334 F.3d at 1309).

The dispute before the court is whether Kent's WeeRide Carrier is properly classified under HTSUS heading 8714 as an accessory to a bicycle or heading 9401 as a seat. The pertinent provisions of Chapters 87 and 94 of the HTSUS are as follows:

> 8714 Parts and accessories of vehicles of headings 8711 to 8713 …
>
> 8714.99 Other: …
>
> **8714.99.80** Other
>
> …
>
> 9401 Seats (other than those of heading 9402), whether or not convertible into beds, and parts thereof: …
>
> 9401.80 Other seats: …
>
> **9401.80.40** Other

HTSUS subheadings 8714.99.80, 9401.80.40. The subheadings are eo nomine provisions meaning they "[d]escribe[ ] an article by a specific name, not by use." Aromont USA, Inc. v. United States, 671 F.3d 1310, 1312 (Fed. Cir. 2012) (citing CamelBak Prods., 649 F.3d at 1364). An eo nomine provision covers all forms of the named article absent limiting language or contrary legislative intent. Nidec Corp. v. United States, 68 F.3d 1333, 1336 (Fed. Cir. 1995).

Defendant argues that Customs correctly classified the WeeRide Carrier under HTSUS heading 8714 that covers "[p]arts and accessories of vehicles of heading 8711

to 8713," which includes "[b]icycles and other cycles (including delivery tricycles), not

motorized . . ." under HTSUS heading 8712. See Def.'s Br. at 7–12. Defendant contends

that the WeeRide Carrier fits under heading 8714 because it is an "accessory" to a bicycle.

Id. at 8. Defendant further argues that the subject merchandise is an "accessory" under

heading 8714 in that an "accessory" is defined as "something extra; thing added help in

a secondary way; . . . a piece of optional equipment for convenience, comfort,

appearance, etc." See id. at 7–8 (citing Webster's New World Dictionary (3d. C. ed.

1988)). Defendant maintains that because the WeeRide Carrier allows a child to ride with

an adult on a bicycle, it is an accessory that adds "to the effectiveness and convenience"

of a bicycle by allowing two individuals to be transported at one time. Id. at 8.

Plaintiff acknowledges that the WeeRide Carrier is prima facie classifiable as an

accessory to a bicycle under subheading 8714.99.80. See Pl.'s Reply at 3. Despite this,

it argues that the subject merchandise is also prima facie classifiable under subheading

9401.80.40, a provision for seats that is more specific than the subheading for a bicycle

accessory. See Pl.'s Br. at 10–11. Plaintiff relies on Additional U.S. Rule of Interpretation

("ARI") 1(c) as support for its claim that the subject merchandise is classifiable as a "seat"

under heading 9401, rather than as a bicycle "accessory" under heading 8714. Pl.'s Br.

at 23. ARI 1(c) provides that "absent special language or context":

> (c) a provision for parts of an article covers products solely or
> principally used as a part of such articles but a provision for
> "parts and accessories" shall not prevail over a specific
> provision for such part or accessory . . .

ARI 1(c).

Plaintiff maintains that there is no special language or context that would require the classification of the WeeRide Carrier as a bicycle accessory rather than the specific provision for "seats" under heading 9401. Pl.'s Br. at 24. Plaintiff further contends that the court must apply the relative specificity analysis under GRI 3(a) to resolve this classification dispute. See Pl.'s Resp. at 3 ("GRI 1 does not determine the classification of the WeeRide seats in issue. . . . GRI 3(a) provides that the most specific provision is preferred over a more general provision."). GRI 3 calls for a relative specificity analysis when two goods are prima facie classifiable under two or more headings, and provides that the heading with the most specific description shall be preferred.

Defendant responds that no relative specificity analysis is required as Note 1(h) of Chapter 94 ("Note 1(h)") prevents classification of the subject merchandise under heading 9401. Def.'s Br. at 11. Note 1(h) states that "[t]his Chapter does not cover . . . Articles of heading 8714 . . . ." Defendant argues that Note 1(h) provides "special language or context" that renders ARI 1(c) inapplicable. Id. at 8–9. In Defendant's view, because Note 1(h) excludes "[a]rticles of heading 8714," and the subject merchandise is classifiable under that heading, it therefore cannot be classified under heading 9401. Id. at 11.

Contrary to Defendant, Plaintiff maintains that Note 1(h) cannot apply to resolve this classification dispute prior to the completion of a relative specificity analysis. See Pl.'s Br. 25–29; Pl.'s Resp. 2–4. Plaintiff contends that Note 1(h) to Chapter 94 does not "come into play unless and until a relative specificity analysis is performed." Pl.'s Br. at 25–29 (citing Sharp Microelectronics Technology Inc. v. United States, 122 F.3d 1446 (Fed. Cir.

Court No. 15-00135                                                      Page 8

1997), Bauer Nike Hockey USA v. United States, 393 F.3d 1246 (Fed. Cir. 2004), and

a footnote in ADC Telecommunications, Inc. v. United States, Court No. 13-00400, 39 CIT

___, 2017 WL 4708021 (Oct. 18, 2017), aff'd, 916 F.3d 1013 (2019)).

        The court disagrees. While there is ample case law to support the preclusive effect

of an exclusionary note under GRI 1, Plaintiff fails to demonstrate that the court must

conduct a relative specificity analysis under GRI 3 prior to applying an exclusionary note.

As previously noted, under GRI 1, the court relies on headings and chapter notes

to classify merchandise. See Avenues in Leather, Inc., 423 F.3d at 1333. If Note 1(h)

is applicable, it would exclude the subject merchandise from classification under

Chapter 94. See, e.g., id., 423 F.3d at 1333–34 ("Note 1(h) to Chapter 48 states that the

Chapter does not cover '[a]rticles of heading 4202 (for example travel goods).' Thus, if the

articles are prima facie classifiable under Heading 4202, then applying Note 1(h),

the articles are specifically excluded from classification under Heading 4820."); Midwest

of Cannon Falls, Inc. v. United States, 122 F.3d 1423, 1429 (Fed. Cir. 1997) ("Note 2(ij)

to chapter 69 states that the chapter does not cover 'Articles of chapter 95.' Accordingly,

the issue here is whether the items at issue prima facie are classifiable under heading

9505. If so, then pursuant to note 2(ij), chapter 69, the items cannot fall under chapter 69

and must be classified under chapter 95."), superseded on other grounds as stated in

WWRD US, LLC v. United States, 886 F.3d 1228 (Fed. Cir. 2018).

        Plaintiff's reliance on Sharp and Bauer to avoid the application of Note 1(h) under

GRI 1 is misplaced. In Sharp, the plaintiff argued that Customs incorrectly classified

certain glass cells under HTSUS heading 9013, and contended that the merchandise was

properly classified under HTSUS subheading 8473.30.40. 122 F.3d at 1447–48. The Government maintained that the classification dispute should be settled by "Note 1(m) of Section XVI of the HTSUS, which provides that '[t]his section [which includes chapter 84 and thus subheading 8473.30.40] does not cover ... Articles of Chapter 90 [including subheading 9013.80.60].'" Id. at 1448. The Federal Circuit held that Note 1(m) alone could not resolve the disputed classification because the precise language of heading 9013 expressly required a relative specificity analysis. See 122 F.3d at 1450. Sharp is inapplicable here as neither heading 8714 nor 9401 mandate a relative specificity analysis.

In Bauer, the court resolved a dispute over hockey pants and whether they were properly classified by Customs under HTSUS subheading 6211.33.00 or by the plaintiff under subheading 9506.99.25. See 393 F.3d at 1248. The court noted that Note 1(t) of Section XI to Chapter 62 excluded articles of Chapter 95 from being classified under Chapter 62 and Note 1(e) to Chapter 95 excluded "sports clothing . . . of textiles, of chapter 61 or 62." Id., 393 F.3d at 1252 n.6. Due to these competing and mutually exclusive exclusionary notes, the court used a relative specificity analysis to determine the heading that provided the most specific description of the merchandise. Id. at 1252–53. Unlike in Bauer, the resolution of the present classification dispute involves only one exclusionary note, i.e., Note 1(h). Accordingly, Bauer is inapplicable.

ADC, however, is instructive. In ADC, there was a dispute about the classification of the plaintiff's fiber optic telecommunications network equipment as assessed by Customs under subheading 9013.80.90 or as claimed by the plaintiff under

subheading 8517.62.00. The plaintiff argued that the merchandise at issue was prima

facie classifiable under both headings and that the classification must be resolved under

GRI 3. See ADC, 39 CIT at ___, 2017 WL 4708021 at *6. The Government argued that

the court should resolve the classification under GRI 1 "because the plaintiff's optical

devices are excluded from chapter 85 by Note 1(m) to Section XVI (which covers chapter

85, HTSUS), which provides: 'this section does not cover ... [a]rticles of Chapter 90.'" Id.

(citation omitted). The court agreed that the relative specificity test under GRI 3 was not

applicable, stating: "[s]imply put: as to which of chapter 90 and chapter 85 provides

the 'more specific' heading on an article's classification, there is no 'comparison' involved,

because Note 1(m) renders GRI 3 inapplicable." Id. Consequently, the court determined

that the merchandise was classified under heading 9013. Id., 39 CIT at ___, 2017

WL 4708021 at *9.

> The Court of Appeals affirmed, explaining:

> > We start with the language of the heading, looking to the
> > relevant section and chapter notes . . . . HTSUS Heading 8517
> > covers "[t]elephone sets, including telephones for cellular
> > networks or for other wireless networks" and "other apparatus
> > for the transmission or reception of voice, images or other
> > data . . . ." Chapter 85 of the HTSUS is contained in Section
> > XVI, and Note 1 to Section XVI provides that "[t]his section
> > does not cover . . . (m) [a]rticles of [C]hapter 90." Therefore,
> > because the subject merchandise is classifiable in HTSUS
> > Heading 9013, which is found in Chapter 90, . . ., it is not
> > classifiable in Section XVI, in which HTSUS Heading 8517 is
> > found.

916 F.3d at 1023–24.

As in <u>ADC</u>, the court here is faced with competing provisions where one heading

has a note excluding merchandise classifiable in the competing heading. Accordingly,

because the WeeRide Carrier is classifiable under heading 8714, <u>see</u> <u>supra</u> Section III.A,

the court determines that Note 1(h) excludes the subject merchandise from being

classified under heading 9401.[1]

### IV.    Conclusion

For the foregoing reasons, the court concludes that Customs properly classified

the WeeRide Carrier under HTSUS subheading 8714.99.80. Accordingly, Plaintiff's

motion for partial summary judgment is denied, and Defendant's cross-motion for partial

summary judgment is granted. In view of the court's decision, it is hereby

**ORDERED** that the parties shall consult regarding Counts 2 and 3 of Plaintiff's

Complaint and shall file a proposed scheduling order on or before July 23, 2019 for the

disposition of those Counts.


                                                    /s/ Leo M. Gordon
                                                  Judge Leo M. Gordon


Dated:   July 9, 2019
         New York, New York

---

[1] Because the court concludes that the subject merchandise is properly classified under heading 8714 due to the application of Note 1(h) pursuant to GRI 1, the court does not reach Plaintiff's arguments relying on supplemental authorities that support classification of the subject merchandise under Chapter 94 pursuant to GRI 3. <u>See</u> Pl.'s Br. at 12–24 (relying on, <u>inter alia</u>, the definition of "furniture" in Note 2 to Chapter 94; the ENs to Chapter 87; and CBP's Informed Compliance Publication on Vehicles, etc.).