Slip Op. 20-123

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| KENT INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Before: Leo M. Gordon, Judge <br><br> Court No. 15-00135 |

**OPINION**

[Plaintiff's motion for summary judgment denied; Defendant's cross-motion for summary judgment granted.]

Dated: August 25, 2020

Philip Yale Simons, Jerry P. Wiskin, and Patrick C. Reed, Simons & Wiskin of South Amboy, NJ for Plaintiff Kent International, Inc.

Monica P. Triana, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, for Defendant United States. With her on the brief were Ethan P. Davis, Acting Assistant Attorney General, Jeanne E. Davidson, Director, Justin R. Miller, Attorney-in-Charge International Trade Field Office, and Aimee Lee, Assistant Director. Of counsel on the brief was Yelena Slepak, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection of New York, NY.

Gordon, Judge: Plaintiff Kent International, Inc. ("Kent") challenges the classification by U.S. Customs and Border Protection ("Customs" or "CBP") of its entries of imported child safety seats for bicycles ("subject merchandise") under the Harmonized Tariff Schedule of the United States ("HTSUS"). Before the court are cross-motions for summary judgment. See Pl.'s Amended Mot. for Summ. J., ECF No. 52 ("Pl.'s Br."); Def.'s Cross-Mot. for Summ. J. and Opp. to Pl.'s Mot. for Summ. J., ECF No. 55 ("Def.'s Br."); see also Pl.'s Reply & Resp. to Def.'s Cross-Mot. for Summ. J., ECF No. 58-2 ("Pl.'s

Resp."); Def.'s Reply in Supp. of Cross-Mot. for Summ. J., ECF No. 59 ("Def.'s Reply"). Customs classified the subject merchandise as "Parts and accessories of vehicles of heading 8711 to 8713: . . . Other: . . . Other" under HTSUS subheading 8714.99.80, at a 10% duty rate. Plaintiff argues that Customs violated the "treatment" provisions of 19 U.S.C. § 1625(c), as well as the "established and uniform practice" provisions of 19 U.S.C. § 1315(d), and that the subject merchandise should be classified under HTSUS heading 9401. The court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (2012). For the reasons set forth below, Plaintiff's motion for summary judgment is denied and Defendant's cross-motion for summary judgment is granted.

## I.　　**Undisputed Facts**

The following facts are not in dispute. See generally Plaintiff's Statement of Material Facts Not in Dispute, ECF No. 51-4 ("Pl.'s Facts Stmt."); Defendant's Response to Plaintiff's Statement of Material Facts, ECF No. 55-3 ("Def.'s Resp. to Facts"); Defendant's Statement of Undisputed Material Facts, ECF No. 55-2 ("Def.'s Facts Stmt."); Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, ECF No. 58-1 ("Pl.'s Resp. to Facts"). The merchandise at issue is Plaintiff's child safety seats for bicycles. Def.'s Facts Stmt. ¶ 1; Pl.'s Resp. to Facts at 1. Customs issued ruling NY L86862 dated August 9, 2005 to Kent classifying its child bicycle safety seats under HTSUS heading 8714 ("2005 Kent Ruling"). Pl.'s Facts Stmt. ¶ 1; Def.'s Resp. to Facts at 1. Starting in April 2008 through at least October 2010, Kent submitted multiple protests, including two separate applications for further review ("AFRs"), to Customs seeking reclassification and re-liquidation under HTSUS heading 9401 of entries of child

bicycle safety seats at the Port of New York/Newark. See Def.'s Facts Stmt. ¶¶ 8–14; Pl.'s Resp. to Facts at 2. From August 2008 through December 2010, Customs granted all of these protests, but did not make a determination on Kent's AFRs. Id.

On October 14, 2010, Kent made requests for post-entry amendments ("PEAs") as to 9 entries of "bicycle child carrier seats and parts thereof," seeking to amend each entry, which had not yet been liquidated, claiming that the proper tariff classification was under heading 9401. Def.'s Facts Stmt. ¶ 15; Pl.'s Resp. to Facts at 2. The PEAs were granted by Customs at the Port of New York/Newark on November 12, 2010. Id. In sum, between August 2008 and November 2010, Customs approved 14 protests covering 35 entries and 9 PEAs covering 9 entries classifying Kent's child bicycle safety seats under HTSUS heading 9401. Def.'s Facts Stmt. ¶¶ 8–15; Pl.'s Resp. to Facts at 2. Beginning with Kent's protest covering entries made in December 2010, Customs stopped granting, and instead suspended, Kent's protests challenging the classification of its child bicycle safety seats at the Port of New York/Newark. Def.'s Facts Stmt. ¶ 18; Pl.'s Resp. to Facts at 2.

The 45 entries of Kent's child bicycle safety seats at issue in this action, submitted under cover of 17 separate protests, were made at the Port of Long Beach between December 4, 2008 and March 31, 2014 and were liquidated between October 16, 2009 and February 13, 2015 under HTSUS heading 8714. See Def.'s Facts Stmt. ¶ 20; Pl.'s Resp. to Facts at 2. The 17 protests filed at the Port of Long Beach were received by CBP between December 24, 2009 and March 12, 2015, and all of those protests were subsequently denied. See Def.'s Facts Stmt. ¶ 21; Pl.'s Resp. to Facts at 2. In several of

the protests filed in 2009 and 2010 at the Port of Long Beach, Kent asked that the port suspend making a decision pending a determination on the second AFR made at the Port of New York/Newark. Def.'s Facts Stmt. ¶ 22; Pl.'s Resp. to Facts at 2. Despite the 2010 approval of the New York/Newark protests, including the protest in which Kent filed the second AFR, Kent was informed by Customs at the Port of Long Beach in 2011 that it planned to deny the pending protests and uphold the classification of the merchandise under HTSUS heading 8714, consistent with the 2005 Kent Ruling that was never revoked by Customs Headquarters. Def.'s Facts Stmt. ¶¶ 23, 24; Pl.'s Resp. to Facts at 2. Kent filed Protest No. 2704-11-100728, which included an AFR, at the Port of Long Beach on April 11, 2011 with respect to the merchandise in issue. Def.'s Facts Stmt. ¶ 25; Pl.'s Resp. to Facts at 2.

Customs issued ruling NY N016953 to one of Kent's competitors, Bell Sports, dated September 21, 2007 classifying its child bicycle seats under HTSUS heading 9401. Pl.'s Facts Stmt. ¶ 23; Def.'s Resp. to Facts at 8. Customs issued ruling NY N066722 to a second of Kent's competitors, Todson, Inc. ("Todson"), on July 16, 2009 classifying its child bicycle seats under HTSUS heading 9401. Pl.'s Facts Stmt. ¶ 21; Def.'s Resp. to Facts at 8. Customs issued ruling NY N166197 to another of Kent's competitors, Britax Child Safety Inc. ("Britax"), on June 6, 2011 classifying its child bicycle seats under HTSUS heading 9401. Pl.'s Facts Stmt. ¶ 22; Def.'s Resp. to Facts at 8.

On June 26, 2014, following notice and comment, Customs issued ruling HQ H180103 revoking the three rulings issued to Bell Sports, Todson and Britax. Def.'s Facts Stmt. ¶ 33; Pl.'s Resp. to Facts at 3. In HQ H180103, Customs determined,

consistent with the 2005 Kent Ruling, that "the child bicycle seat designed for attachment to an adult bicycle is classified in heading 8714, HTSUS," dutiable at 10% ad valorem. Id. This revocation was published in the Customs Bulletin on July 23, 2014 and became effective on September 22, 2014. Id. On February 11, 2015, in response to Kent's April 2011 AFR, Customs issued ruling HQ H170637 ("2015 Kent Ruling"). Def.'s Facts Stmt. ¶ 34; Pl.'s Resp. to Facts at 3. In that ruling, Customs found that "Kent's child bike seats are properly classified under heading 8714, HTSUS, as accessories to bicycles," and also denied Kent's claims that Customs violated a treatment or an established and uniform practice. Id.

## II.     Standard of Review

The court reviews Customs' protest decisions de novo. 28 U.S.C. § 2640(a)(1). USCIT Rule 56 permits summary judgment when "there is no genuine issue as to any material fact." USCIT R. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). In considering whether material facts are in dispute, the evidence must be considered in the light most favorable to the non-moving party, drawing all reasonable inferences in its favor. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Anderson, 477 U.S. at 261 n.2.

## III.    Background

This action has been the subject of three previous opinions, and the court assumes familiarity with those decisions. See Kent Int'l, Inc. v. United States, 40 CIT ___, 161 F. Supp. 3d 1340 (2016) ("Kent I") (addressing various procedural matters); Kent Int'l, Inc. v. United States, 41 CIT ___, 264 F. Supp. 3d 1340 (2017) ("Kent II") (denying

Defendant's motion to dismiss Plaintiff's "treatment" and "established and uniform practice" claims); Kent Int'l, Inc. v. United States, 43 CIT ___, 393 F. Supp. 3d 1218 (2019) ("Kent III") (ruling for Defendant on merits of classifying Plaintiff's child bicycle safety seats under HTSUS heading 8714 as accessories of bicycles).

## IV. Discussion

### A. Treatment under 19 U.S.C. § 1625(c)

In the Motorola line of cases, this Court and the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") discussed 19 U.S.C. § 1625(c), as well as the implementing regulation adopted by Customs that further clarifies the meaning of the statutory phrase "treatment previously accorded by the Customs Service to substantially identical transactions," 19 C.F.R. § 177.12(c). See Motorola, Inc. v. United States, 28 CIT 1310, 350 F. Supp. 2d 1057 (2004); Motorola, Inc. v. United States, 436 F.3d 1357 (Fed. Cir. 2006) ("Motorola II"); Motorola, Inc. v. United States, 30 CIT ___, 462 F. Supp. 2d 1367 (2006) ("Motorola III"); Motorola, Inc. v. United States, 509 F.3d 1368 (Fed. Cir. 2007). "To establish a violation of § 1625(c)(2), [an importer] must show that: (1) an interpretative ruling or decision; (2) effectively modified; (3) a 'treatment' previously accorded by Customs to 'substantially identical transactions'; and (4) the interpretative ruling or decision had not been subject to the notice and comment process set forth in § 1625(c)(2)." See Motorola III, 30 CIT at ___, 462 F. Supp. 2d at 1372.

Additionally, the implementing regulation addresses what an importer must demonstrate to establish a "treatment":

(c) Treatment previously accorded to substantially identical transactions –

(1) General. The issuance of an interpretive ruling that has the effect of modifying or revoking the treatment previously accorded by Customs to substantially identical transactions must be in accordance with the procedures set forth in paragraph (c)(2) of this section. The following rules will apply for purposes of determining under this section whether a treatment was previously accorded by Customs to substantially identical transactions of a person:

(i) There must be evidence to establish that:
    (A) There was an actual determination by a Customs officer regarding the facts and issues involved in the claimed treatment;
    (B) The Customs officer making the actual determination was responsible for the subject matter on which the determination was made; and
    (C) Over a 2-year period immediately preceding the claim of treatment, Customs consistently applied that determination on a national basis as reflected in liquidations of entries or reconciliations or other Customs actions with respect to all or substantially all of that person's Customs transactions involving materially identical facts and issues;

(ii) The determination of whether the requisite treatment occurred will be made by Customs on a case-by-case basis and will involve an assessment of all relevant factors. In particular, Customs will focus on the past transactions to determine whether there was an examination of the merchandise (where applicable) by Customs or the extent to which those transactions were otherwise reviewed by Customs to determine the proper application of the Customs laws and regulations. For purposes of establishing whether the requisite treatment occurred, Customs will give diminished weight to transactions involving small quantities or values, and Customs will give no weight whatsoever to informal entries and to other entries or transactions which Customs, in the interest of commercial facilitation and accommodation, processes expeditiously and without examination or Customs officer review;

> (iii) Customs will not find that a treatment was accorded to a person's transactions if:
> 
>> (A) The person's own transactions were not accorded the treatment in question over the 2-year period immediately preceding the claim of treatment;
>> (B) The issue in question involves the admissibility of merchandise;
>> (C) The person made a material false statement or material omission in connection with a Customs transaction or in connection with the review of a Customs transaction and that statement or omission affected the determination on which the treatment claim is based; or
>> (D) Customs advised the person regarding the manner in which the transactions should be presented to Customs and the person failed to follow that advice; and
> 
> (iv) The evidentiary burden as regards the existence of the previous treatment is on the person claiming that treatment. The evidence of previous treatment by Customs must include a list of all materially identical transactions by entry number (or other Customs assigned number), the quantity and value of merchandise covered by each transaction (where applicable), the ports of entry, the dates of final action by Customs, and, if known, the name and location of the Customs officer who made the determination on which the claimed treatment is based. In addition, in cases in which an entry is liquidated without any Customs review (for example, the entry is liquidated automatically as entered), the person claiming a previous treatment must be prepared to submit to Customs written or other appropriate evidence of the earlier actual determination of a Customs officer that the person relied on in preparing the entry and that is consistent with the liquidation of the entry.

19 C.F.R. § 177.12(c). In <u>Motorola II</u>, the Federal Circuit recognized that the term "treatment" in § 1625(c) was ambiguous and held that § 177.12(c)(1)(ii) contained a permissible interpretation of the term that was entitled to deference under <u>Chevron</u>. See <u>Motorola II</u>, 436 F.3d at 1366–67; see also <u>Motorola III</u>, 30 CIT at ___, 462 F. Supp. 2d. at 1373–74 (considering application of § 177.12(c)(1)(ii) on remand).

Plaintiff advances two different lines of argument for its claim that Customs violated the treatment statute. First, Plaintiff contends that Customs did not afford Kent a treatment that had been established with respect to Plaintiff's own entries of the subject merchandise. See Pl.'s Br. at 12–21. Plaintiff contends that between August 2008 and October 2010 "Customs established a treatment of classifying Kent's child bicycle seats as seats in HTSUS heading 9401 and disregarding the [2005 Kent Ruling] that had classified the seats as bicycle accessories in HTSUS heading 8714." Pl.'s Br. at 12–13. Specifically, Plaintiff argues that "the heading 9401 treatment is reflected in the Customs approvals of 14 protests covering 35 entries, plus 9 PEAs covering 9 entries." Id. at 13.

Defendant disagrees noting that "Plaintiff's claim fails because CBP did not consistently apply the alleged classification determination 'on a national basis as reflected in liquidations of entries or reconciliations or other Customs actions' during any two-year period." Def.'s Reply at 3 (citing 19 C.F.R. § 177.12(c)(1)(i)). Specifically, Defendant highlights Kent's 45 entries at the Port of Long Beach that were entered between December 4, 2008 and March 31, 2014 and were liquidated between October 16, 2009 and February 13, 2015 under HTSUS heading 8714. Id. at 4 (citing Def.'s Facts Stmt. ¶ 20; Pl.'s Resp. to Facts at 2). Defendant argues that in 2009 and 2010, within the purported 2-year period identified by Plaintiff supporting its treatment claim, Kent asked that the Port of Long Beach suspend any decision on Kent's pending protests until Customs reached a decision on Kent's second AFR at the Port of New York/Newark. See id. (citing Def.'s Facts Stmt. ¶¶ 21–22; Pl.'s Resp. to Facts at 2). Defendant contends that "[a]lthough plaintiff focuses only on the entries liquidated and/or reliquidated in

heading 9401 from 2008 to 2010 at one port, a treatment claim requires the Court to look to 'all or substantially all of that person's Customs transactions.'" Id. at 5 (citing 19 C.F.R. § 177.12(c)(1)(i)) (internal citation omitted). Given the 2005 Kent Ruling, as well as the refusal of Customs' officials at the Port of Long Beach to approve Kent's protests in 2009 and 2010, Defendant maintains that "[t]he consistent application of any classification determination 'on a national basis' over any two-year time period does not exist on these facts, which is fatal to plaintiff's claim." Id.

In an apparent acknowledgment of this fact, Plaintiff argues that because the protests at the Port of Long Beach remained pending during the time period identified by Plaintiff, the liquidations of the subject entries under heading 8714 are not final and "do not constitute final Customs actions." Pl.'s Resp. at 7. Thus, Plaintiff insists that Customs' actions with respect to Kent's Long Beach entries do not disqualify Kent's claim of treatment under 19 C.F.R. § 177.12(c). Id. at 8.

The court agrees with Defendant that Plaintiff cannot demonstrate a "consistent application of any classification determination 'on a national basis' over any two-year time period." Plaintiff's attempt to brush away Customs' actions with respect to the entries at the Port of Long Beach directly conflicts with the language of the regulation. The regulation does not limit the considerations of the court to only "final Customs actions." Rather, the court reviews whether "Customs consistently applied [a] determination . . . as reflected in liquidations of entries or reconciliations or other Customs actions with respect to all or substantially all of that person's Customs transactions involving materially identical facts and issues." 19 C.F.R. § 177.12(c)(1)(i). "[L]iquidations" are specifically

identified as actions that must be considered. Although the court agrees that it must consider the protest approvals and PEAs at the Port of New York/Newark as "other Customs actions," the court likewise considers the gamut of Customs' actions taken at the Port of Long Beach. Given that the regulation specifically requires consistency in Customs' actions on a "national basis," the court cannot conclude that Plaintiff has established that Customs violated a treatment under § 1625(c)(2) and 19 C.F.R. § 177.12(c).

Alternatively, Plaintiff contends that Customs violated the treatment statute by classifying Kent's merchandise under heading 8714 despite routinely classifying substantially identical merchandise imported by Kent's competitors under heading 9401. See id. at 22–28. Plaintiff relies on the three rulings issued to its competitors (Bell Sports in 2007, Todson in 2009, and Britax in 2011), arguing that these rulings demonstrate that "Customs adopted a 'treatment' from 2007 to 2014 of classifying all similar child bicycle safety seats" under heading 9401. See Pl.'s Br. at 23–25. While Defendant disputes various aspects of Plaintiff's claim of treatment based on the entries of third parties, see Def.'s Br. at 22–29, the court concludes that it need not reach the issue of whether Plaintiff may rely on the third-party entries that it identifies to establish its claim of treatment.[1]

Plaintiff's claim of treatment based on the entries of third parties fails for the same reason its claim of treatment based on its own entries fails. Given the 2005 Kent Ruling

---

[1] Similarly, the court does not reach Defendant's arguments challenging the time frame for Plaintiff's claim of treatment, see Def.'s Br. at 19–21, as the court agrees that Plaintiff cannot point to any two-year time period of consistent treatment as required under the regulation.

and Customs' actions with respect to Kent's entries at the Port of Long Beach, Plaintiff is unable to demonstrate that there was a two-year period in which Customs <u>consistently</u> classified entries of the subject merchandise under heading 9401. Plaintiff is thus unable to demonstrate the consistency in Customs' consideration and classification of the subject merchandise on a national basis that is necessary for Plaintiff to prevail on a claim of treatment under § 1625(c)(2) and 19 C.F.R. § 177.12(c).

### B.　Established and Uniform Practice under 19 U.S.C. § 1315(d)

Plaintiff next argues that Customs' classification of the subject merchandise under HTSUS heading 8714 violated 19 U.S.C. § 1315(d). Section 1315(d) provides in relevant part:

> **(d) Effective date of administrative rulings resulting in higher rates**　No administrative ruling resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform practice shall be effective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days after the date of publication in the Federal Register of notice of such ruling.

19 U.S.C. § 1315(d). This Court has previously held that a plaintiff could show an established and uniform practice ("EUP") under § 1315(d) through actual uniform liquidations, even though the Secretary of the Treasury had made no "finding" that such a practice existed. See <u>Heraeus-Amersil, Inc. v. United States</u>, 8 CIT 329, 335, 600 F. Supp. 221, 226 (1984). This so-called <u>de facto</u> EUP arises when Customs consistently classified a particular type of merchandise under a specific category of the HTSUS prior to some distinct point in time. See <u>Atari Caribe, Inc. v. United States</u>, 16 CIT 588, 595,

799 F. Supp. 99, 106–07 (1992). The requirements for establishing a de facto EUP, however, are stringent. See Jewelpak Corp. v. United States, 297 F.3d 1326, 1332 (Fed. Cir. 2002) (citing Heraeus-Amersil, Inc. v. United States, 795 F.2d 1575 (Fed. Cir. 1986)).

In Kent II, the court acknowledged that Plaintiff may have a claim for a de facto EUP based on the allegations in its Complaint, but that Plaintiff faces a significant evidentiary burden. Specifically, the court explained that to prevail on its claim that a de facto EUP existed, Plaintiff must demonstrate: "(1) a high number of entries resulting in the alleged uniform classifications, (2) a high number of ports at which the merchandise was entered, (3) an extended period of time over which the alleged uniform classifications took place, and (4) a lack of uncertainty regarding the classification over time." Kent II, 43 CIT at ___, 264 F. Supp. 3d at 1344 (citing Heraeus-Amersil, Inc. v. United States, 9 CIT 412, 415–16, 617 F. Supp. 89, 93 (1985)).

The court notes that Customs previously rejected Kent's claim that the agency violated a de facto EUP "for several reasons." See 2015 Kent Ruling. First, as it did in denying Kent's treatment claim, Customs relied on the fact that the 2005 Kent Ruling, "which classified Kent's child bike seats under heading 8714," was never revoked. Id. Second, Customs emphasized that the "Port of Long Beach liquidated all of Kent's entries of child bike seats under heading 8714." Id.

Here, Plaintiff maintains that "based the best information available to Kent reflecting hundreds of entries at 14 ports of entry over a 10-year period, Customs had an EUP of classifying child bicycle seats under HTSUS heading 9401." Pl.'s Br. at 29. Plaintiff

further contends that "the Bell Sports, Todson, and Britax Rulings of 2007, 2009, and 2011 support [Kent's claim as to Customs'] established and uniform practice as well." Id.[2]

Plaintiff's arguments, however, would have the court completely disregard the 2005 Kent Ruling, as well as all of Kent's entries made between 2008 and 2014 that were classified and liquidated under heading 8714. See Pl.'s Reply at 14–15 (arguing that there were "Uniform Liquidations Of Child Bicycle Safety Seats Under Heading 9401 Between 2007 And 2014," but omitting any mention of Kent's entries at the Port of Long Beach classified under heading 8714). Plaintiff is correct that its entries at the Port of Long Beach remained under suspended protest for the relevant time period; however, Plaintiff fails to address the fact that these entries demonstrate that Customs did not engage in an established and uniform practice of classifying child safety seats under heading 9401.[3] The court cannot see how it could reasonably conclude that there was "a lack of uncertainty regarding the classification over time" given this record. Accordingly, the court rejects Plaintiff's claim that Customs violated a de facto EUP.

---

[2] The court notes that Plaintiff's arguments are similar to those rejected by Customs in the 2015 Kent Ruling.

[3] A significant portion of Plaintiff's briefing on the EUP issue, as well as Defendant's response, focuses on evidence of Kent's competitors' "substantially identical" entries that were classified under heading 9401. See Def.'s Br. at 36–38; Pl.'s Reply at 19–23. Because Customs' classification of Plaintiff's entries at the Port of Long Beach demonstrates that there was not an established and uniform practice of classifying the merchandise under heading 9401, the court does not reach the question of whether Plaintiff may rely on third-party entries in establishing a de facto EUP, nor whether Plaintiff's proffered evidence with respect to the third-party entries is admissible.

### V.     Conclusion

For the foregoing reasons, the court concludes that Plaintiff has failed to demonstrate that Customs denied Kent the benefit of a treatment under 19 U.S.C. § 1625(c) or an EUP under 19 U.S.C. § 1315(d) when the agency classified the subject merchandise under HTSUS heading 8714. Plaintiff's motion for summary judgment is therefore denied, and Defendant's cross-motion for summary judgment is granted. Judgment will be entered accordingly.

/s/ Leo M. Gordon<br>
Judge Leo M. Gordon

Dated: August 25, 2020
       New York, New York