**UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. LEO M. GORDON, SENIOR JUDGE**

| | |
|---|---|
| KENT INTERNATIONAL, INC., : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Court No. 15-00135 |
| : | |
| UNITED STATES, : | |
| : | |
| Defendant. | |

**PLAINTIFF'S POST-REMAND SUPPLEMENTARY BRIEF**

Philip Yale Simons
Jerry P. Wiskin
Patrick C. Reed
SIMONS & WISKIN
*Attorneys for Plaintiff*

98 Craig Road
Manalapan, NJ 07726
Tel (732) 316-2300

Dated: March 29, 2022

**TABLE OF CONTENTS**

I. Plaintiff Has Established A Treatment Based On Its Own Entries . . . . . . . . . . . 1

II. The "Seat" Treatment Applies To All Kent's Entries In Issue . . . . . . . . . . . . . . . 3

    A. The Government Concedes That The "Seat" Treatment Applies To Entries Made After Kent's Claim Of Treatment Accrued. . . . . . . . . . . . . . . 3

    B. The "Seat" Treatment Also Applies To Entries Whose Liquidations Were Not Final When Kent's Claim Of Treatment Accrued . . . . . . . . . . . . 5

        1. Contrary To The Government's Argument, *American Fiber* Does Not Address The Issue Of Whether An Accrued Treatment Applies To Entries Made Before The Claim Of Treatment Accrued . . . . . . . . . . . . . . . 5

        2. Under The Regulation, A Treatment Applies To All Entries Made Before The Treatment Is Revoked . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        3. CBP Protest Procedures Require The "Seat" Treatment To Be Applied To Kent's Suspended Protests . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        4. Section 1625(c) And The Regulation Do Not Require Any Showing Of Reliance On The Treatment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    C. Under The Government-Advocated Approach Of Focusing On Entry Dates, Kent's Claim Of Treatment Accrued On December 13, 2008 . . . . 11

III. Plaintiff Has Established A Treatment Based On All Importers' Entries . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## TABLE OF AUTHORITIES

Cases:

*American Fiber & Finishing, Inc. v. United States*, 121 F. Supp.3d 1273 (Ct. Int'l Trade 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-6,9-11

*California Industrial Prods., Inc. v. United States,* 436 F. 3d 1341 (Fed. Cir. 2006) . . 13

*International Custom Products, Inc. v. United States*, 784 F.3d 1182 (Fed. Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*International Custom Products, Inc. v. United States*, 791 F.3d 1329 (Fed. Cir. 2015), *cert. denied*, __ U.S. __, 136 S. Ct. 2408 (2016). . . . . . . . . . . . . . . . . . . 7

*International Custom Products, Inc. v. United States*,  843 F.3d 1355 (Fed. Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Kent International, Inc. v. United States*, 466  F. Supp.3d 1361 (Ct. Int'l Trade 2020) . 3

*Kent International, Inc. v. United States*, 17 F.4th 1104 (Fed. Cir. 2021) . . . . . . . . . . 1

*Peerless Clothing Int'l, Inc. v. United States*, 602 F. Supp 2d 1309 (Ct. Int'l Trade 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Sea-Land Service, Inc. v. United States*, 239 F.3d 1366 (Fed. Cir. 2001). . . . . . . . . . 10

Statutes:

Harmonized Tariff Schedule of the United States —

    Heading 9401  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,12,13

19 U.S.C. § 1625(c)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,3,7-11

Other Authorities:

19 C.F.R. —

    § 174.13(a)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    § 177.9(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

§ 177.12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

§ 177.12(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

§ 177.12(c)(1)(i)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3

§ 177.12(c)(1)(i)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

§ 177.12(c)(1)(i)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,3

§ 177.12(c)(1)(iii)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

§ 177.12(e)(3)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Former § 177.9(e)(2) & (3) (2002) (repealed 2002) . . . . . . . . . . . . . . . . . . . . . . 9

Customs Service, *19 C.F.R. Part 177: Administrative Rulings*, T.D. 02-49, 67 Fed.
     Reg. 53483 (Aug. 16, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,4,9,10,13

**STATEMENT**

Plaintiff Kent International, Inc. ("Kent") submits this Post-Remand Supplementary Brief pursuant to the Court's scheduling order requesting such briefing following the Federal Circuit's decision in *Kent International, Inc. v. United States*, 17 F.4th 1104 (Fed. Cir. 2021), which held that bypass liquidations, also known as automatic liquidations, must not be considered in evaluating Kent's claim. For the reasons explained below, the Court should hold that Kent qualifies for a statutorily protected two-year "treatment previously accorded" by U.S. Customs and Border Protection ("Customs" or "CBP") under 19 U.S.C. § 1625(c) ("Section 1625(c)")  (codifying Tariff Act of 1930, § 625(c)) and that Kent's child safety seats for bicycles are properly classified as seats within heading 9401, Harmonized Tariff Schedule of the United States (HTSUS), by operation of Section 1625(c).

**ARGUMENT**

**I.       Plaintiff Has Established A Treatment Based On Its Own Entries.**

After bypass liquidations are disregarded, Kent satisfies all the requirements for its Section 1625(c) claim that Customs adopted a statutorily protected "treatment previously accorded" of consistently classifying Kent's child safety seats as "seats" in HTSUS heading 9401 for more than two years. This treatment included disregarding the earlier 2005 ruling letter that no longer represented Customs' current position. The treatment is based on Kent's own entries and is reflected in 14 protest approvals, resulting in reliquidation of 35 entries, as well as Post-Entry Amendment ("PEA") approvals for nine entries, that classified Kent's child safety seats in HTSUS heading 9401 between August 2008 and November 2010. The protest and PEA approvals covering these 44 entries account for every

Customs action in the United States in actual, reasoned decisions by a Customs official that determined the proper application of the law to Kent's merchandise during the two-year period from August 2008 to November 2010.

Customs applied the "seat" classification to Kent's merchandise "on a national basis" (19 C.F.R. § 177.12(c)(1)(i)(C)) because no Customs office anywhere in the United States between August 2008 and November 2010 made any actual determination reaching a different classification.  As explained in the drafting history of the regulation, the "national basis" requirement is intended "to ensure that a treatment does not result from a geographically narrow application of a determination that is *different from the action taken by Customs* on that person's substantially identical transactions *at other locations*." Customs Service, *19 C.F.R. Part 177: Administrative Rulings*, T.D. 02-49, 67 Fed. Reg. 53483, 53494 (Aug. 16, 2002) (italics added)) (hereinafter T.D. 02-49).  Under this standard, "on a national basis" does not require the treatment to have been applied at more than one port, but different ports may not take inconsistent actions.  In Kent's case, the 14 protest and nine PEA approvals at Newark were clearly not the mistaken or misinformed actions of a rogue port.  The Newark decisions were made in consultation with the CBP National Import Specialists in New York, who agreed unequivocally with the "seat" classification, and CBP Headquarters, which declined to rule on the matter because Newark agreed with Kent.  And the "seat" classification for Kent's product was consistent with the Customs ruling letters issued to Bell Sports in 2007, Todson in 2009, and Britax in 2011 — companies that imported through multiple ports under those rulings.

The 14 protest and nine PEA approvals satisfy the requirements of being "actual determination[s] ... regarding the facts and issues involved in treatment claim," 19 C.F.R.

§ 177.12(c)(1)(i)(A), and being made by a Customs officer "who is responsible for the subject matter on which the determination was made." *Id*. § 177.12(c)(1)(i)(B).

The 2015 Headquarters Decision denying Kent's pending protests represents "an interpretative ruling or decision"; it "effectively modified" the 2008-2010 treatment of classifying Kent's seats as seats; and the 2015 Ruling "had not been subject to the notice and comment process set forth in § 1625(c)(2)." *Kent International, Inc. v. United States*, 466 F. Supp.3d 1361, 1365 (Ct. Int'l Trade 2020) (stating the requirements for proving a treatment claim, but without subsequently deciding whether they were satisfied in this case).

Point II below explains more fully why the protest and PEA approvals between August 2008 and November 2010 satisfy the requirement that Customs applied the importer's desired classification during the two years "immediately preceding the claim of treatment." 19 C.F.R. § 177.12(c)(1)(i)(C).

Plaintiff's previous briefs on the Section 1625(c) treatment issue are incorporated herein by reference. *See* Plaintiff's Brief (Amended) [ECF No. 52] at 10-21; Plaintiff's Reply Brief [ECF No. 58 #2] at 1-10.

**II.   The "Seat" Treatment Applies To All Kent's Entries In Issue.**

    **A.   The Government Concedes That The "Seat" Treatment Applies To Entries Made After Kent's Claim Of Treatment Accrued.**

The two-year period "immediately preceding the claim of treatment" (19 C.F.R. § 177.12(c)(1)(i)(C)) in this case is the period ending in November 2010, when Customs stopped its consistent previous practice of approving Kent's protests from August 2008 to

November 2010.  *But see infra* Point II(C) (discussing an alternative approach using entry dates instead of protest approval dates).

The November 2010 date for accrual of Kent's claim of treatment derives from *American Fiber & Finishing, Inc. v. United States*, 121 F. Supp.3d 1273, 1285-87 (Ct. Int'l Trade 2015).  In that case, Customs violated a statutorily protected treatment by liquidating entries under a different classification from the classification declared on entry.  The court ruled that the 2-year period "immediately preceding the claim of treatment" is defined by "the inflection point when Plaintiff's claimed treatment changed, i.e., when the 'pattern of actions taken by Customs on [Plaintiff's] import transactions, on which [Plaintiff claims it] has reasonably relied,' putatively changed without notice or comment." *Id*. at 1287 (citing T.D. 02-49, *supra*, 67 Fed. Reg. at 53489). The reasoning in *American Fiber* applies to Kent's case *mutatis mutandis*, using protest approval dates instead of entry dates.

The Government has conceded here and before the Federal Circuit that if Kent has established a claim of treatment at all, the treatment applies to Kent's entries filed after November 2010, which represent the majority of Kent's entries in this case (31 of 45 entries).  *See* Government Brief, *Kent Int'l Inc. v. United States*, App. No. 2021-1065, at 29 n.4 (Fed. Cir. Apr. 23, 2021) ("For the Court to adopt the two-year time period proffered by Kent, the first entry for which Kent could assert a treatment claim would have to have entered the United States after November 2010."); *accord* Government Reply Brief [ECF No. 59] at 9.

The dispute over applying the "seat" classification involves, therefore, the 14 entries that were filed before November 2010 and whose liquidations were not final at that time.

The disputed entries consist of seven entries against whose liquidations Kent filed protests before November 2010, and seven entries against whose liquidations Kent filed protests after November 2010.  For the reasons explained in Point B below, the "seat" treatment applies to all entries made before November 2010, as well as those made after that date.

**B.     The "Seat" Treatment Also Applies To Entries Whose Liquidations Were Not Final When Kent's Claim Of Treatment Accrued.**

***1.     Contrary To The Government's Argument,*** *American Fiber* ***Does Not Address The Issue Of Whether An Accrued Treatment Applies To Entries Made Before The Claim Of Treatment Accrued.***  The Government somehow argues that the court's decision in *American Fiber, supra,* means that a treatment does not apply to entries made before the claim of treatment accrued — entries made before the date when Customs changed the classification of the importer's merchandise.  This interpretation of *American Fiber* is wrong.

The Government erroneously conflates the issue of when a claim of treatment accrues with the separate issue of which entries an accrued treatment applies to.  As discussed in Point A above, *American Fiber* holds that a claim of treatment accrues when Customs stops granting the importer's desired classification. Since the dispute in *American Fiber* involved the classification declared on entry versus the classification on liquidation, the court examined entry dates to determine when the treatment ended and when the importer's claim of treatment accrued.

Unlike Kent's case, *American Fiber* did not involve any pending protests against entries whose liquidations were not yet final when the claim of treatment accrued. *American Fiber* did not consider the issue of whether a treatment applies to protested

-5-

entries whose liquidation has not become final. *American Fiber* only decided when a claim of treatment accrues, not which entries an accrued treatment applies to. It provides no support for the Government's argument against applying the "seat" treatment to entries made before November 2010 but whose liquidations were not yet final.

### 2. Under The Regulation, A Treatment Applies To All Entries Made Before The Treatment Is Revoked.

The Customs Regulation provides that once a claim of treatment has accrued, "revocation [of the treatment] ... must be carried out in accordance with the notice procedures set forth in this section ... and the ... revocation will take effect as provided in paragraph (e) of this section." 19 C.F.R. § 177.12(c)(1). Paragraph (e) provides in relevant part that revocation of a treatment "will apply to merchandise entered, or withdrawn from warehouse for consumption: (A) Sixty calendar days after the date of publication of the final modifying or revoking notice ...." *Id*. § 177.12(e)(3)(ii) (or, in clause (B), allowing the importer to opt for applying the revocation immediately to entries made after the date of publication).

This regulation provides that an existing treatment, until it is revoked, applies to all entries made before the revocation takes effect. Necessarily, the set of entries made before a revocation takes effect includes any entries whose liquidation was not yet final when the claim of treatment accrued — here, Kent's entries made before November 2010. The regulation makes it clear that all such entries must be finally liquidated in accordance with the treatment. Nothing in the regulation supports the opposite conclusion that a treatment does not apply to entries whose liquidation was not yet final when the claim of treatment accrued.

Furthermore, Section 1625(c) and the implementing regulation give an accrued treatment the same legal force and effect as a letter ruling: both remain binding on Customs until they are revoked. The corollary principle that a ruling letter applies to entries whose liquidation is not final should govern a treatment, too. *See* 19 C.F.R. § 177.9(a) ("Generally, a ruling letter is effective on the date it is issued and may be applied to all entries which are unliquidated, or other transactions with respect to which the Customs Service has not taken final action on that date."). As of November 2010, the accrued "seat" treatment was an absolutely binding, ironclad, locked-in administrative precedent that Customs could not lawfully depart from or disregard in liquidating unliquidated entries and deciding undecided protests, until and unless the revocation took effect after the required notice-and-comment proceeding — and then only prospectively. *Cf. International Custom Products, Inc. v. United States*, 784 F.3d 1182, 1186 (Fed. Cir. 2014) (holding, in the context of a binding ruling letter, that under Section 1625(c) "Customs Service personnel were 'b[ound]' to liquidate them under the sauces heading until the Ruling Letter was 'modified or revoked'"), *aff'g award of attorney fees*, 843 F.3d 1355, 1358-59 (Fed. Cir. 2016) (affirming award of attorney fees based on the lower court's determination that the Government's position was rooted in a desire to avoid following the Section 1625(c) procedures and was not founded on a reasonable basis in law and fact).

**3. CBP Protest Procedures Require The "Seat" Treatment To Be Applied To Kent's Suspended Protests.** The CBP procedures for processing and deciding protests lead to the same conclusion as Point 2 above that the "seat" treatment applies to the protested entries whose liquidations were not final in November 2010.

Kent's protests in this case were filed by Kent and processed by Customs under the "protest suspension" procedure for handling a series of related protests.  *See* 19 C.F.R. § 174.13(a)(7).  In accordance with the protest regulations, Kent's Newark protest and application for further review "involve[d] the same merchandise and the same issues" as its later Long Beach protests.  *Id.*  Therefore, Kent's Long Beach protests "request[ed] disposition in accordance with the action taken on [Kent's] previously filed [Newark] protest."  *Id.*  The Federal Circuit has held that "protest suspension" gives importers a procedure to avoid litigating every suspended protest (and the need to pay any duties assessed on liquidation), since the suspended protests are supposed to be decided in accordance with the lead protest.  *See International Custom Products, Inc. v. United States*, 791 F.3d 1329, 1337-38 (Fed. Cir. 2015) (but saying that liquidation of the entries, instead of disposition of the protests, is suspended), *cert. denied*, __ U.S. __, 136 S. Ct. 2408 (2016).  Where, as in Kent's case, the approval of the lead protest becomes part of a statutorily protected treatment, Kent's request for disposition in accordance with the lead protest and Section 1625(c) jointly give Kent the legal right that all its suspended protests will be approved.

***4. Section 1625(c) And The Regulation Do Not Require Any Showing Of Reliance On The Treatment.***  The premise underlying the Government's argument appears to be that the "seat" treatment cannot apply to Kent's entries unless Kent reasonably relied on the treatment in its import transactions.  *See* Government Reply Brief [ECF No. 59] at 9 ("the Court must look to the earliest entry for which plaintiff asserts a

pattern of CBP's actions on which plaintiff 'has reasonably relied' and which 'putatively changed.'") (citing *American Fiber*, *supra*, 121 F.3d at 1287).

On the contrary, there is no legal requirement for an importer to show that it has relied on a treatment in its import transactions. The lack of need to show reliance on a treatment undermines the Government's objection to applying the "seat" treatment to entries made before Kent's claim of treatment accrued in November 2010. In the absence of any requirement for showing reliance, there is no justification for failing to apply a treatment to entries whose liquidations have not become final when the claim for treatment accrued.

The Customs Regulation itself does not in any way require the importer to show that it has relied on the treatment. *See* 19 C.F.R. § 177.12 (containing no requirement of showing reliance). In fact, a former regulation did require a showing of reliance on a revoked treatment, but Customs repealed it when Customs promulgated the current regulation implementing protection of treatment under Section 1625(c). *See* Former 19 C.F.R. § 177.9(e)(2) & (3) (2002) (requiring in paragraph (e)(2) a showing that the importer "reasonably relied" on the treatment) (repealed in T.D. 02-49, *supra*, 67 Fed. Reg. at 53496 ("Paragraphs (d) and (e) are removed ....")).

The Government's erroneous argument appears to stem from an incomplete quotation in the *American Fiber* case about "has reasonably relied" from the drafting history of the Customs Regulation. *See* Government Reply Brief [ECF No. 59] at 9 (quoting "has reasonably relied" language from *American Fiber*, 121 F.3d at 1287, which quoted T.D. 02-49, *supra*, 67 Fed. Reg. at 53489). Contrary to the Government's position, the complete

passage in the drafting history says that Section 1625(c) provides "protection against abrupt changes made by Customs without adequate prior notice, *particularly* where the change is ... to a pattern of actions taken by Customs ... on which a party has reasonably relied in pursuing its Customs transactions." T.D. 02-49, *supra*, 67 Fed. Reg. at 53489 (italics added). The word "particularly" omitted from the *American Fiber* reasoning and the Government's briefs makes it clear that the Section 1625(c) protection for a treatment includes, but is not limited to, situations in which an importer has relied on the treatment.

The Federal Circuit's decision in *Sea-Land Service, Inc. v. United States*, 239 F.3d 1366 (Fed. Cir. 2001), explains more accurately that Section 1625(c) is intended to achieve multiple goals, not just protecting reliance interests. These goals are "to ensure that the interested public has notice of a proposed change in Customs' policy *and* to allow the public to make comments on the appropriateness of the change *and* to modify any current practices that were based in reliance on Customs' earlier policy." *Id*. 1373 (italics added). Under the drafting history of the regulation and under *Sea-Land*, but in contrast to the incomplete quotation in *American Fiber* and the Government's briefs, Section 1625(c) protects importers against unannounced changes even where an importer has not actually relied on the treatment.

The drafting history explains that importers are entitled to statutory protection where Customs actions have "created an impression that could give rise to an expectation as regards future action by Customs." T.D. 02-49, *supra*, 67 Fed. Reg. at 53491. Again, no showing of reliance is required, only an "expectation as regards future action." In Kent's case, after more than two years of approvals of its protests from August 2008 to November

2010, Kent had "an expectation as regards future action" that Customs would approve all its suspended protests on its Long Beach entries. This is true both for the seven entries protested before November 2010 and the seven entries protested after November 2010.

Finally, even if any showing of reliance on the treatment were required, Kent relied on the treatment accruing in November 2010 when it chose to file protests after November 2010 against the liquidations of seven of the fourteen Long Beach entries. The Government appears to concede this point as well. *See* Government Reply Brief [ECF No. 59] at 10 (not rebutting Kent's argument that it relied on the "seat" treatment in its protests filed after November 2010 but only objecting with respect to protests filed before that date).

Plaintiff's previous arguments on the two-year period and which entries the treatment applies to are incorporated herein by reference. *See* Plaintiff's Reply Brief [ECF No. 58 #2] at 3-7.

### C. Under The Government-Advocated Approach Of Focusing On Entry Dates, Kent's Claim Of Treatment Accrued On December 13, 2008.

As part of its argument based on *American Fiber, supra*, the Government appears to argue that the timing of a claim of treatment must be determined strictly according to the entry dates of the entries in issue.

If the timing of a claim of treatment is based strictly on entry dates, however, the analysis needs to be consistent throughout. A strict focus on entry dates needs to be used not only to identify when the "claim of treatment" accrued (the date when CBP stopped granting the importer's desired classification), but also the period in which the treatment occurred (the period during which CBP granted the importer's desired classification). A strict focus on entry dates means, therefore, that the two-year period in which a treatment

occurred should determined from the entry dates of the entries in which Customs applied the importer's desired classification, including entries ultimately reliquidated after approved protests.

In Kent's case, the "seat" treatment is reflected in fourteen protests approved between August 2008 and November 2010, which cover 35 entries that were originally made between December 13, 2006, and May 9, 2009. *See* Ex. C in support of Plaintiff's Motion for Summary Judgment on Courts 2 & 3 [ECF No. 51 #6]. These 35 entries were all ultimately reliquidated under the "seat" classification in HTSUS heading 9401. If the Court adopts the Government's argument focusing on the entry dates of the relevant entries, the relevant period for identifying the "seat" treatment started with earliest entry date of December 13, 2006 and Kent's claim of treatment accrued two years later on December 13, 2008. Comparing this period to the entry dates of the protested entries before the Court, only the earliest three entries in issue were made before December 13, 2008: two entries on December 4, 2008 and one on December 12, 2008. The 42 remaining entries before the Court were made after December 13, 2008.

In sum, if the Court adopts the Government-advocated approach of using entry dates, and even if the Court also agrees with the Government that a treatment does not apply to entries filed before the claim of treatment accrued, Kent wins on 42 entries in dispute and loses on three entries.

### III.  Plaintiff Has Established A Treatment Based On All Importers' Entries.

After its bypass entries are excluded from consideration, and as with its claim of treatment based on its own entries, Kent has established that Customs applied a

consistent treatment of child safety seats for bicycles to all importers of similar merchandise for more than two years.

To adjudicate Kent's claim based on all importers, the court should rule that the provision of the Customs Regulations purporting to disallow consideration of third parties is illegal and void. The provision in issue is codified as 19 C.F.R. § 177.12(c)(1)(iii)(A) (providing that Customs will not find a treatment if "[t]he person's own transactions were not accorded the treatment in question ...."); *see also* T.D. 02-49, *supra*, 67 Fed. Reg. at 53489 (explaining that this provision precludes consideration of third parties: "Customs remains of the view that ... 'treatment' must have reference only to the transactions of the person who is claiming the existence of the treatment ...."). The Government acknowledges that the Federal Circuit's decision in *California Industrial Prods., Inc. v. United States,* 436 F. 3d 1341, 1352-1353 (Fed. Cir. 2006), held that it is appropriate to consider the treatment of other importers' similar merchandise in an individual importer's treatment claim. Technically, however, *California Industrial Products* did not invalidate the regulation, which did not apply to the entries before the court. Instead it simply held that the agency interpretation codified in the regulation was contrary to the statute.

As for the substance of Kent's claim, the change in Customs' position on the classification of the child safety seats for bicycles after 2005 is reflected in the issuance of the ruling letters to other importers in which substantially identical child safety seats for bicycles were classified as seats. Customs issued the ruling letter to Bell Sports in 2007 and reaffirmed it in 2009 for Todson and 2011 for Britax. Bell Sports, Todson, and Britax all had a duty under the doctrine of reasonable case to make entry in accordance with the these ruling letters. It can be presumed that the three companies did in fact enter their

child bicycle safety seats under Heading 9401. The evidence reflects further that these companies' entries under Heading 9401 were liquidated "no change" at numerous ports of entry throughout the United States. *See* Ex. J (Todson), Ex. K (Bell) & Ex. L (Britax) in support of Plaintiff's Motion for Summary Judgment on Courts 2 & 3 [ECF No. 51 #7 & #8]. This court has determined that "no change" liquidations are not the same as bypass liquidations and qualify as Customs "actions" that must be considered in a treatment claim. *See Peerless Clothing Int'l, Inc. v. United States*, 602 F. Supp 2d 1309, 1318-19 (Ct. Int'l Trade 2009).

Kent began protesting the classification of its own seats as "accessories" in 2008 as a result of Customs' change in its position on the classification of this merchandise. As a result of Customs' change in position and the three ruling letters, any and every importer of similar merchandise except for Kent was not only able, but was legally required, to enter the seats as "seats." Kent alone had to make entry in accordance with the discredited 2005 ruling letter and file protests to obtain the proper "seat" classification. For Bell Sports, Todson, and Britax, the "seat" classification remained in effect until the revocation of their rulings took effect prospectively in September 2014. Kent wants to receive the same treatment as all other importers of similar child safety seats for bicycles.

Plaintiff's previous briefs supporting its claim based on all importers are incorporated herein by reference. *See* Plaintiff's Brief (Amended) [ECF No. 52] at 22-28; Plaintiff's Reply Brief [ECF No. 58, #2] at 11-18.

## CONCLUSION

For all the foregoing reasons, Plaintiff Kent International, Inc. respectfully requests the Court to grant summary judgment in Kent's favor and hold that the imported child bicycle seats liquidated under heading 8417 are properly classified in heading 9401, HTSUS, by operation of 19 U.S.C. § 1625(c).

                Respectively submitted,

                SIMONS & WISKIN
                *Attorneys for Kent International, Inc.*

    By:  /s/ *Philip Yale Simons*
          Philip Yale Simons
          Jerry P. Wiskin
          Patrick C. Reed

          98 Craig Road
          Manalapan, NJ 07726
          Tel (732) 316-2300
          Fax (732) 316-2365

Dated: March 29, 2022