UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. LEO M. GORDON, SENIOR JUDGE

| | |
|---|---|
| KENT INTERNATIONAL, INC., | : |
| Plaintiff, | : Court No. 15-00135 |
| v. | : |
| UNITED STATES, | : |
| Defendant. | : |

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT AS TO COUNT 3 OF THE COMPLAINT**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

AIMEE LEE
Assistant Director

Of Counsel:
Yelena Slepak, Esq.
Office of Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

MONICA P. TRIANA
Trial Attorney
Civil Division, Dept. of Justice
Commercial Litigation Branch
International Trade Field Office
26 Federal Plaza, Room 346
New York, New York 10278
*Attorneys for Defendant*
Tel. No. 212-264-9240 or 9230

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

STATEMENT OF FACTS ................................................................................................ 3

ARGUMENT ..................................................................................................................... 4

I. KENT CANNOT ESTABLISH THE EXISTENCE OF A TREATMENT OF CLASSIFYING KENT'S CHILD BICYCLE SEATS IN HEADING 9401 EVEN WITHOUT CONSIDERATION OF THE BYPASS ENTRIES ................................ 4

    A. Statutory And Regulatory Background .................................................... 4

    B. There Was No Treatment Previously Accorded To Kent ........................ 6

    C. The Two-Year Time Period For Kent's Treatment Claim Is The Two Years Preceding The Entry That Did Not Receive The Anticipated Treatment .............. 9

II. CBP'S ACTIONS WITH RESPECT TO MERCHANDISE IMPORTED BY THIRD PARTIES DO NOT CONSTITUTE A TREATMENT OF CLASSIFYING CHILD BICYCLE SEATS IN HEADING 9401 ............................ 11

    A. Plaintiff Fails to Establish That A Treatment Was Previously Accorded to Child Bicycle Seats ........................................................... 11

        1. The Court Should Not Consider Third-Party Rulings ............................. 11

        2. The Record Lacks Any Evidence Showing That CBP Liquidated Entries Of Child Bicycle Seats In Heading 9401 After Examination Or Review Of The Merchandise ............................................................... 13

    B. Plaintiff Fails To Establish That Entries Made By Bell Sports, Todson And Britax Constitute Transactions That Are "Substantially Identical" To Kent's Transactions ................................................................................................ 14

CONCLUSION ................................................................................................................ 15

# **TABLE OF AUTHORITIES**

**Cases**

*Am. Fiber & Finishing v. United States,*
   121 F. Supp. 3d 1273 (Ct. Int'l Trade 2015) ........................................................................ 9, 11

*Calif. Indus. Prods., Inc. v. United States,*
   436 F.3d 1341 (Fed. Cir. 2006) ................................................................................................ 13

*Chevron U.S.A., Inc. v. Natural Resources Def. Council, Inc.,*
   467 U.S. 837 (1984) .................................................................................................................... 6

*Kahrs Int'l, Inc. v. United States,*
   645 F. Supp. 2d 1251 (Ct. Int'l Trade 2009) ........................................................................... 5

*Kent Int'l, Inc. v. United States,*
   264 F. Supp. 3d 1340 (Ct. Int'l Trade 2017) ............................................................... 5, 11, 12

*Kent Int'l, Inc. v. United States,*
   393 F. Supp. 3d 1218 (Ct. Int'l Trade 2019) ........................................................................... 1

*Kent Int'l, Inc. v. United States,*
   466 F. Supp. 3d 1361 (Ct. Int'l Trade 2020) ................................................................. *passim*

*Kent Int'l, Inc. v. United States,*
   17 F.4th 1104 (Fed. Cir. 2021) ......................................................................................... *passim*

*Motorola, Inc. v. United States,*
   436 F.3d 1357 (Fed. Cir. 2006) .................................................................................................. 6

*Motorola, Inc. v. United States,*
   462 F. Supp. 2d 1367 (Ct. Int'l Trade 2006) ..................................................................... 12, 14

*Motorola, Inc. v. United States,*
   509 F.3d 1368 (Fed. Cir. 2007) ............................................................................... 6, 12, 13, 14

**Harmonized Tariff Schedule of the United States**

Chapter 87

    Heading 8714 ................................................................................................................ *passim*

        Subheading 8714.99.80 ............................................................................................. 7

Chapter 94

    Heading 9401 ................................................................................................................ *passim*

        Subheading 9401.80 ........................................................................................... 13, 14

        Subheading 9401.80.20 ............................................................................................ 13

        Subheading 9401.80.40 ............................................................................................ 13

**Statutes**

19 U.S.C. § 1315 ........................................................................................................................... 1

19 U.S.C. § 1625 ............................................................................................................... *passim*

**Regulations**

19 C.F.R. § 177.12 ............................................................................................................ *passim*

19 C.F.R. § 177.9 ..................................................................................................................... 7, 12

**Other Authorities**

67 F.R. 53483 (August 16, 2002) ............................................................................................... 7

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. LEO M. GORDON, SENIOR JUDGE

| | | |
|---|---|---|
| KENT INTERNATIONAL, INC., | : | |
| Plaintiff, | : | Court No. 15-00135 |
| v. | : | |
| UNITED STATES, | : | |
| Defendant. | : | |

**DEFENDANT'S SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT AS TO COUNT 3 OF THE COMPLAINT**

Defendant, the United States (Government), respectfully submits this supplemental brief in accordance with the Court's February 23, 2022 order (ECF No. 73) and in further support of our cross-motion for summary judgment as to Count 3 of plaintiff's, Kent International, Inc. (Kent or plaintiff), complaint.

**INTRODUCTION**

This matter is before the Court on remand after partial reversal by the United States Court of Appeals for the Federal Circuit. *See Kent Int'l, Inc. v. United States*, 17 F.4th 1104 (Fed. Cir. 2021) (*Kent V*). The issues in this case were bifurcated, and the Court first decided that the proper classification of the WeeRide Kangaroo Ltd. Center-Mounted Bicycle-Child Carrier was in heading 8714, Harmonized Tariff Schedule of the United States (HTSUS), (Count 1). *Kent Int'l, Inc. v. United States,* 393 F. Supp. 3d 1218 (Ct. Int'l Trade 2019). That decision was not appealed. The Court next addressed whether U.S. Customs and Border Protection (Customs or CBP) had an Established and Uniform Practice (EUP), under 19 U.S.C. § 1315(d), of classifying child bicycle seats in heading 9401 (Count 2), and whether Customs improperly revoked a

treatment of classifying the merchandise in heading 9401, pursuant to 19 U.S.C. § 1625(c) (Count 3).

The parties filed cross-motions for summary judgment on plaintiff's EUP and treatment claims, and this Court granted the Government's motion as to both, which Kent appealed. *Kent Int'l, Inc. v. United States*, 466 F. Supp. 3d 1361 (Ct. Int'l Trade 2020) (*Kent IV*). On appeal, the Federal Circuit affirmed as to Kent's EUP claim, but reversed as to Kent's claim of treatment. *Kent V*, 17 F.4th at 1110-11. Specifically, the appellate court found that this Court should not have considered entries of child bicycle seats that Kent made at the Port of Long Beach, which were liquidated in heading 8714 through CBP's bypass procedures, and remanded this issue "for a determination of whether there was such a treatment [of classifying child bicycle seats in heading 9401], excluding consideration of the bypass entries." *Id.* at 1111.

This Court issued an order, dated February 23, 2022, identifying the following topics for supplemental briefing on remand:

1. Whether Plaintiff Kent International, Inc. can establish the existence of a claim of treatment regarding the tariff classification of its imported child bicycle seats without consideration of any bypass entries; and

2. Identification of the '2-year period immediately preceding the claim of treatment.' See 19 C.F.R. § 177.12(c)(1)(i)(C) . . . .

Feb. 23, 2022 Order (ECF No. 73). We rely on many points previously made in our motion for summary judgment and reply (ECF Nos. 55, 59), which we incorporate by reference herein.[1]

Even discounting the bypass entries, Kent cannot establish a treatment of classifying its child bicycle seats in heading 9401. Indeed, CBP did not "consistently appl[y]" any decision to

---

[1] Although we reference our prior submissions throughout, pursuant to the Federal Circuit decision, we do not rely on any prior argument which considered the bypass entries at the Port of Long Beach to challenge plaintiff's argument that a treatment was previously accorded.

2

classify child bicycle seats in heading 9401 "on a national basis" for the two-year period preceding the claim of treatment. 19 C.F.R. § 177.12(c)(1)(i)(C). Instead, a single port of entry erroneously classified Kent's child bicycle seats in heading 9401, contrary to a binding CBP ruling and contrary to law. Moreover, the relevant period of evaluation is the two years prior to the date of Kent's first affected entry, *i.e.* the first entry for which plaintiff contends it is entitled to classification in heading 9401 based on a prior treatment, which was December 4, 2008.

Finally, should this Court consider Kent's treatment claim based on the classification of merchandise imported by Kent's competitors, that claim must be rejected. There is no evidence that CBP liquidated third-party entries of child bicycle seats in heading 9401.

## STATEMENT OF FACTS

The Government relies on the statement of undisputed material facts submitted with its cross-motion for summary judgment as to Counts 2 and 3 of plaintiff's complaint. *See* Gov't MSJ at 2-8 and Statement of Undisputed Material Facts (ECF No. 55-1); *see also* Pl. Response to Gov't Statement of Material Facts (ECF No. 58-1). The following undisputed facts were summarized in the Government's Reply Brief at 3-5:

- In 2005 Customs issued a ruling classifying Kent's child bicycle seats in heading 8714.

- **Port of New York/Newark:**

    o In 2005 and most of 2006, Kent entered merchandise that it contends included child bicycle seats. It was liquidated, as entered, in heading 8714.

    o Kent continued to import the merchandise and began protesting its classification in 2008. The Port of New York/Newark approved 14 of those protests resulting in merchandise being reclassified in heading 9401. The merchandise was entered and initially liquidated, pursuant to the 2005 ruling, in heading 8714.

    ▪ The first two protests (covering 8 entries) were approved in August and October of 2008. The Application for Further Review (AFR) filed with the first protest was never decided.

3

- ▪ The remaining 12 protests (of which the Government contends only 9 protests cover child bicycle seats) were approved between October and December of 2010. Although a second AFR was filed with the lead protest, it was never decided.

   o In November 2010, CBP approved 9 requests for post-entry amendment (PEA) filed by Kent, resulting in the classification of the merchandise at liquidation in heading 9401.

   o In the years following approval of the 9 PEAs, Kent's entries of child bicycle seats were made and liquidated at the Port of New York/Newark in heading 8714. Those protests are currently suspended.

- **<u>Port of Long Beach, California</u>** (The entries at issue)

   o Forty-five (45) entries of Kent's child bicycle seats were made at the Port of Long Beach between December 4, 2008 and March 31, 2014 and liquidated between October 16, 2009 and February 13, 2015 in heading 8714.

   o Kent filed 17 protests challenging that classification. In 2009 and 2010 – during the time period Kent claims that a treatment was accorded by Customs at the Port of New York/Newark – Kent asked the Port of Long Beach to suspend decision on the pending protests until CBP made a decision on the second AFR filed as to entries made at the Port of New York/Newark.

   o Although, in late 2010, the Port of New York/Newark approved the second group of protests, CBP officials at the Port of Long Beach informed Kent in 2011 that they, instead, intended to deny the pending protests, in accordance with the 2005 Kent Ruling. *Id.*

Gov't Reply at 3-5. The undisputed facts were succinctly stated in this Court's decision. *Kent IV*, 466 F. Supp. 3d 1361 at 1363-64. These documents are incorporated by reference herein.

## ARGUMENT

I. **KENT CANNOT ESTABLISH THE EXISTENCE OF A TREATMENT OF CLASSIFYING KENT'S CHILD BICYCLE SEATS IN HEADING 9401 EVEN WITHOUT CONSIDERATION OF THE BYPASS ENTRIES**

   A. **Statutory And Regulatory Background**

As the Federal Circuit acknowledged, "19 U.S.C. § 1625(c)(2) mandates that any duty classification decision that would 'have the effect of modifying the *treatment previously accorded*

4

by the Customs service to substantially identical transactions'" must be made through the notice and comment procedures. *Kent V*, 17 F.4th at 1108 (emphasis in original).

The applicable standard is undisputed. To establish a claim of treatment, four elements *must* be satisfied: (1) there must be "a treatment previously accorded by Customs;" (2) the entries must be "substantially identical transaction[s] to the previous treatment;" (3) Customs must have "made a proposed interpretive ruling or decision that would have the effect of modifying the previous treatment . . .;" and (4) "the proposed interpretive ruling or decision violated the notice and comment requirements . . . ." *Kent Int'l, Inc. v. United States,* 264 F. Supp. 3d 1340, 1346 (Ct. Int'l Trade 2017) (*Kent II*) (internal quotation marks omitted). The burden in establishing these elements "lies on the party" claiming treatment, *Kahrs Int'l, Inc. v. United States*, 645 F. Supp. 2d 1251, 1287 (Ct. Int'l Trade 2009) (citing 19 C.F.R. § 177.12(c)(1)(iv)), and plaintiff fails in that burden.

To establish that a "treatment [was] previously accorded," an importer must show that:

  A. There was *an actual determination* by a Customs officer regarding the facts and issues involved in the claimed treatment;

  B. The Customs officer making the actual determination was responsible for the subject matter on which the determination was made; and

  C. *Over a 2-year period* immediately preceding the claim of treatment, Customs *consistently applied that determination* <u>on a national basis</u> as reflected in liquidations of entries or reconciliations or other Customs actions with respect to all or substantially all of that person's Customs transactions involving materially identical facts and issues.

19 C.F.R. § 177.12(c)(1)(i) (emphasis added)). Kent must demonstrate "what specific entries of the . . . merchandise were previously classified under the desired tariff provision." *Kent II*, 264 F. Supp. at 1346. The regulation further provides that:

5

>   (ii) [t]he determination of whether the requisite treatment occurred *will be made by Customs on a <u>case-by-case basis</u>* and will involve an assessment of <u>*all relevant factors*</u>. In particular, Customs will focus on the past transactions to determine whether there was an examination of the merchandise (where applicable) by Customs or the extent to which those transactions were otherwise reviewed by Customs to determine the proper application of the Customs laws and regulations.…

19 C.F.R. § 177.12(c)(1)(ii) (emphasis added). The Federal Circuit, in *Motorola, Inc. v. United States*, 436 F.3d 1357, 1365-67 (Fed. Cir. 2006) and *Motorola, Inc. v. United States*, 509 F.3d 1368, 1371-72 (Fed. Cir. 2007) (*Motorola IV)*, found these sections of the regulation to be reasonable interpretations of the statute, entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Def. Council, Inc.*, 467 U.S. 837 (1984). *Kent IV,* 466 F. Supp. 3d at 1366.

### B. There Was No Treatment Previously Accorded To Kent

To address the Court's question as to whether Kent can establish a treatment claim without consideration of bypass entries, the answer is "no," for a number of reasons. Plaintiff claims that a treatment was established based on actions taken from August of 2008 through November of 2010. While we disagree as to the accuracy of this time period, *see infra*, the statutory and regulatory requirements cannot be met during any two-year period. No treatment was accorded to Kent because there was no CBP determination that was consistently applied "on a *national basis* as reflected in liquidations of entries or reconciliations or other Customs actions with respect to all or substantially all of that person's Customs transactions . . ." 19 C.F.R. § 177.12(c)(1)(i)(C)(emphasis added). Instead, a single port of entry made erroneous determinations, both in 2008 and 2010, contrary to a binding a ruling and contrary to law. A single port's actions do not bind CBP, pursuant to 19 U.S.C. § 1625(c)(2), to apply that erroneous determination to entries made at other ports.

6

The first "determination" made by CBP with respect to Kent's child bicycle seats was the 2005 Kent ruling directing that the merchandise be classified in subheading 8714.99.80. Pl. Ex. A (2005 Kent Ruling). That ruling letter "represent[ed] the official position of the Customs Service with respect to the particular transaction or issue described therein and is binding on all Customs Service personnel in accordance with the provisions of this section until modified or revoked." 19 C.F.R. § 177.9(a). Although Kent entered its merchandise, in accordance with the 2005 Kent Ruling, almost uniformly in heading 8714 (where it were initially liquidated), plaintiff bases its treatment claim on protest approvals and PEAs at the Port of New York/Newark classifying Kent's child bicycle seats in heading 9401. Pl. MSJ at 12-13. The actions plaintiff identifies were taken (at the Port of New York/Newark) during two separate time periods – first in August and December of 2008 and then from October to December of 2010. *See supra* at 3-4.

We agree that these were "actual determinations" by the Port of New York/Newark; however, they cannot, alone, form the basis of a treatment claim. The regulation requires that the "actual determination" be "consistently applied . . . on a national basis," and that did not occur here. 19 C.F.R. § 177.12(c)(1)(i)(C). The requirement that a determination be applied on a "national basis" was, among other things, "to ensure that a treatment does not result from a geographically narrow application of a determination that is different from the action taken by Customs on that person's substantially identical transactions at other locations." 67 F.R. 53483, 53494 (Aug. 16, 2002). Determinations made solely at the Port of New York/Newark are not reflective of a CBP determination applied on a national basis.

Moreover, while it is true that the only "actual determinations" made between August 2008 and November 2010 occurred at the Port of New York/Newark, this resulted from plaintiff's request that protests filed at another port in 2009 and 2010 be suspended. *See Kent IV*,

7

466 F. Supp. 3d at 1363.  Indeed, between August 2008 and December 2010, Kent made 15 entries of child bicycle seats at the Port of Long Beach, 8 of which were liquidated in heading 8714, through CBP's bypass procedures.  Summons (ECF No. 1).  Kent then filed several protests against these liquidations at the Port of Long Beach, one in December 2009 and the others in April and June of 2010, each of which similarly challenged the classification of the merchandise in heading 8714.  *See e.g.*, Protest No. 2704-09-103402, Court File.  However, when the protests were filed, Kent asked the Port of Long Beach to suspend its decision pending determinations on the second AFR at the Port of New York/Newark.  *Id.*  This, in effect, limited CBP's actions during the identified time period to the Port of New York/Newark.

Although the Court cannot consider the Long Beach entries liquidated in heading 8714 because they occurred through CBP's bypass procedures, the fact that there were entries and protests at a port of entry other than New York/Newark for the same merchandise at issue here is relevant.  Indeed, the regulation requires consideration of "all relevant factors" in this "case-by-case" analysis.  19 C.F.R. § 177.12(c)(1)(ii).

Notably, in early 2011, shortly after the 2010 protest approvals and PEAs by CBP at the Port of New York/Newark classifying Kent's child bicycle seats in heading 9401, CBP at the Port of Long Beach informed Kent that its protests would be denied.  Indeed, the Port of Long Beach intended to apply the binding 2005 Kent Ruling that required classification in heading 8714.  *Kent III*, 466 F. Supp. 3d at 1363-64.  Thus, as soon as the Long Beach protests were no longer suspended, CBP stated that the merchandise should be classified in heading 8714.  No other port of entry made a determination to classify Kent's merchandise in heading 9401.  Nonetheless, plaintiff seeks to bind CBP to classification of all of its Long Beach entries in heading 9401 simply because the Port of New York/Newark made an incorrect determination.

8

Neither the statute nor the regulation requires that result. Treatment should not and cannot be granted due to plaintiff's request to another port that it refrain from making a decision.

Because there was no actual determination that was consistently applied "on a national basis" as to Kent's merchandise during any time period, Kent cannot establish a treatment.

### C. The Two-Year Time Period For Kent's Treatment Claim Is The Two Years Preceding The Entry That Did Not Receive The Anticipated Treatment

The Court's order also asked the parties to identify the two-year time period immediately preceding the claim of treatment in accordance with the Federal Circuit's remand. *Kent V*, 17 F.4th at 1110; Feb. 23, 2022 Order (ECF No. 73). Kent asserts that the relevant two-year time period begins in August 2008, when the Port of New York/Newark approved its first protest related to Kent's child bicycle seats, and ends in November 2010, with the approval of certain PEAs. Pl. MSJ at 12-13. Although the facts do not establish a treatment, the two-year time period identified by Kent is contrary to law. Gov't MSJ at 19-21; Gov't Reply at 7-10.

By regulation, the relevant time period for determining whether CBP "consistently applied" a particular determination – here classification under heading 9401 – is the "2-year period immediately preceding the claim of treatment." 19 C.F.R. § 177.12(c)(1)(i)(C). The trial court, in *Am. Fiber & Finishing v. United States*, 121 F. Supp. 3d 1273, 1281-88 (Ct. Int'l Trade 2015), analyzed both what constitutes a "claim of treatment," and how to identify the relevant two-year time period. The *Am. Fiber & Finishing* court defined a "claim" as "[t]he aggregate of operative facts giving rise to a right enforceable by court." *Id.* at 1283-84. Or, it can be defined as "the assertion of an existing right," *id.* at 1283, which is different from the administrative mechanism (protest) in which the claim is asserted. *Id.* at 1285. The court further held that a "claim of treatment" arose on the date an importer first entered merchandise that was not

9

afforded the treatment sought. *Id.* at 1287. That date is "the inflection point when Plaintiff's claimed treatment changed." *Id*. Therefore, "the two years immediately preceding Plaintiff's claim of treatment are the two years immediately preceding its earliest affected entry (*i.e.*, the first entry that does not receive the anticipated, relied upon treatment)." *Id.*

Here, Kent's first "claim of treatment" was asserted with respect to an entry made at the Port of Long Beach on December 4, 2008 (the earliest entry in this case). Protest No. 2704-09-103402, Court File. With respect to that entry (and the entries made thereafter), plaintiff asserts that it is entitled to classification in heading 9401, based on a "treatment previously accorded." The Court must, therefore, look to the two years immediately preceding that entry to determine whether CBP consistently applied a specific classification determination on a "national basis." Because CBP's first action resulting in classification of the merchandise under heading 9401 occurred with the approval of the first protest at the Port of New York/Newark in August of 2008, only four months prior to its entry on December 4, 2008, Kent cannot satisfy the two-year regulatory requirement as to that entry. 19 C.F.R. § 177.12(c)(1)(i)(C). The same analysis must be conducted for every entry for which treatment is claimed.

Kent, however, asserts that the relevant two-year time frame for its claim of treatment is August 2008 through November 2010. But Kent fails to identify what CBP action triggered the claim for relief. Kent merely asserts that in November 2010 "Customs stopped approving the protests that classified Kent's seats in heading 9401." Pl. Opp. Br. at 4-5. But this is not an action that would trigger a treatment claim. In defining the two-year period, Kent must identify the point in time when it claims to be entitled to classification in heading 9401 at entry based on a prior consistent pattern of action. It is therefore logical to look to the two-year period preceding the earliest entry on which an importer claims relief under 19 U.S.C. § 1625(c). Here,

10

that date is December 4, 2008 – the "inflection point" on which a purported "pattern of actions taken by Customs . . . on which [plaintiff claims it] has reasonably relied" changed. *Am. Fiber & Finishing*, 121 F. Supp. 3d at 1287 (internal quotation marks omitted).

Even if the Court adopted the two-year time period proffered by Kent – assuming a treatment was "previously accorded" (which it was not) – the first entry for which Kent could assert a treatment claim would have to have entered the United States after November 2010. Indeed, Kent could not have relied on this 2008-2010 treatment when it imported merchandise on December 4, 2008, or when it filed a protest in 2009. Accordingly, Kent cannot show a two-year period of consistent national application of a CBP determination to establish treatment.

## II.  CBP'S ACTIONS WITH RESPECT TO MERCHANDISE IMPORTED BY THIRD PARTIES DO NOT CONSTITUTE A TREATMENT OF CLASSIFYING CHILD BICYCLE SEATS IN HEADING 9401

### A. Plaintiff Fails to Establish That A Treatment Was Previously Accorded To Child Bicycle Seats

To the extent that Kent claims that it satisfied the treatment statute based on entries made by three other importers (Bell Sports, Todson and Britax), this argument fails. As set forth more fully in our prior submissions, Gov't MSJ at 22-28, Gov't Reply at 10-18, incorporated by reference herein, plaintiff has not established that a treatment was previously accorded to child bicycle seats. Indeed, Kent must prove that "the duty-free rate accorded to other child bicycle seats resulted from an actual determination by Customs . . . that . . . was consistently applied on a national basis" for the two years preceding the claim of treatment. *Kent III*, 264 F. Supp. 3d at 1346. Kent has not, and cannot, establish facts to support that claim.

#### 1. The Court Should Not Consider Third-Party Rulings

Kent has relied on rulings issued by CBP to Bell Sports (2007), Todson (2009) and Britax (2011) in support of its treatment claim. *See* Pl. MSJ at 22-28. This is contrary to both CBP

11

regulation and Federal Circuit case law.  Indeed, treatment denotes a consistent "pattern of action by Customs involving . . . a sufficient degree of examination or review for classification purposes."  *Motorola, Inc. v. United States*, 462 F. Supp. 2d 1367, 1381 (Ct. Int'l Trade 2006) (*Motorola III)*; *see Motorola IV*, 509 F.3d at 1371-72.  These "actions" include "liquidations of entries or reconciliations or other Customs actions." 19 C.F.R. § 177.12(c)(1)(i)(C).  Evidence of treatment includes a list of the "materially identical transactions" by entry number, quantity and value of the merchandise, ports of entry and the dates of final action.  19 C.F.R. § 177.12(c)(1)(iv); *see Kent II*, 264 F. Supp. 3d 1346.  Because rulings are not actions taken with respect to specific entries, they cannot satisfy this evidentiary requirement.

Consideration of rulings under 19 U.S.C. § 1625(c) was addressed in the *Motorola* line of cases, which specifically precludes consideration of rulings (even those covering "substantially identical transactions") when conducting a 19 U.S.C § 1625(c)(2) treatment analysis.  *See Motorola III*, 462 F. Supp. 2d at 1379-82; *Motorola IV*, 509 F.3d at 1372.  Rulings are relevant with respect to a 19 U.S.C. § 1625(c)(1) claim (which prohibits actions that modify or revoke a *prior ruling* without notice and comment) and they only bind an importer with respect to the specific merchandise discussed in that ruling.  That is, the classification identified in a ruling letter does not govern the classification of similar or substantially identical merchandise.  *Motorola IV*, 509 F.3d at 1372; 19 C.F.R. § 177.9(b)(2).  If rulings related to substantially identical merchandise were considered, those rulings could essentially be binding on another importer through section 1625(c)(2).  As the Federal Circuit in *Motorola IV* held, "[a]llowing an importer to rely on subsection (c)(2) merely because it had secured multiple [pre-classification rulings] covering 'substantially identical' merchandise would create a fictitious catchall in subsection (c)(2), thereby gutting the strict identity requirement of the [pre-classification ruling]

12

system and rendering subsection (c)(1) superfluous." *Motorola IV*, 509 F.3d at 1372.  The same would be true where, as here, it is a third party that obtained a ruling as to substantially identical merchandise.  Therefore, neither the Bell Sports, Britax or Todson rulings can be considered in a treatment analysis.  Only CBP actions are considered.

### 2. The Record Lacks Any Evidence Showing That CBP Liquidated Entries Of Child Bicycle Seats In Heading 9401 After Examination Or Review Of The Merchandise

Kent has not established that there were actual entries of child bicycle seats made by third parties that, after CBP review, were liquidated in heading 9401.  Although "substantially identical transactions" may not be limited to the importer's own transactions, *Calif. Indus. Prods., Inc. v. United States,* 436 F.3d 1341, 1355-56 (Fed. Cir. 2006), Kent presented no evidence showing that any third party imported child bicycle seats, or that CBP classified that merchandise at liquidation in heading 9401.  Plaintiff references entries that are included in the reports generated by CBP's Automated Commercial Environment (ACE).  Pl. Opp. Br. at 14-15.  However, as previously explained, Gov't MSJ at 24-26, 34-36; Gov't Reply at 13-15, the ACE reports list entries of merchandise filed by Bell Sports, Todson and Britax and liquidated by CBP in subheading 9401.80.  Pl. Exs. J, K, L (ACE Reports).  They do not identify the merchandise or whether that merchandise was reviewed by CBP prior to liquidation.

Kent improperly relies on an assumption that the merchandise included in the entries must be child bicycle seats – that no other item imported by these importers could be classified in subheadings 9401.80.20 or 9401.80.40.  Pl. Opp. Br. at 14-15.  No such conclusion can be drawn.  *See* Gov't MSJ at 34-36; Def. Ex. 22 (Declaration of Dharmendra Lilia) ¶¶ 4-5, 8-11. Not only do the reports fail to identify the specific type of merchandise included in those entries, but CBP neither receives nor maintains that type of data.  *Id.*  On their own, the reports are

13

evidence only that Bell Sports, Todson, and Britax imported merchandise that was classified in subheading 9401.80.  This is insufficient to establish a treatment.

Moreover, even if plaintiff established that the merchandise covered by the entries (and liquidations) consisted of child bicycle seats, there also must be evidence of "sufficient examination or review by Customs" for those entries to qualify as a treatment.  *Motorola III,* 462 F. Supp. 2d at 1374.  There must be evidence that CBP reviewed the merchandise in the entries and determined that heading 9401 is the appropriate classification.  *See Motorola IV*, 509 F.3d at 1372.[2]  According to 19 C.F.R. § 177.12(c)(1)(ii), and confirmed in the Federal Circuit's recent decision, mere bypass entries will not be considered.  *Kent V,* 17 F.4th at 1108-10.

Because there are no facts on this record to establish that the merchandise in the entries included in the ACE reports consisted of child bicycle seats or that those entries were reviewed in any way by CBP prior to their liquidation, the reports, and the entries identified therein, cannot be considered in a treatment analysis.[3]

> B. **Plaintiff Fails To Establish That Entries Made By Bell Sports, Todson And Britax Constitute Transactions That Are "Substantially Identical" To Kent's Transactions**

Kent had argued previously that the requirement that the entries at issue be "substantially identical transaction[s] to the previous treatment" is satisfied because the merchandise identified in the Bell Sports, Todson and Britax rulings is the same as the merchandise under review in this case.  Pl. MSJ at 23-25; Pl. Opp. Br. at 13-14.  As stated above, the record lacks any admissible

---

[2] To the extent plaintiff references 19 C.F.R. § 177.12(c)(1)(iv) in support of a contention that the third parties relied on a ruling in making its entries, there is no evidence of that based on this record.  And, nearly half of the 101 Todson entries on the ACE reports were made before the ruling was issued to Todson in 2009.  *See* Gov't Reply at 15-16; Pl. Ex. J (Todson Ace Report).
[3] To the extent plaintiff references the Affidavit of Neal Todrys, the Government previously addressed both its admissibility and substance in our MSJ at 36-39 and our reply brief at 19-21.

14

evidence that the merchandise contained in the entries on the ACE reports consists of the same merchandise that was the subject of the third-party rulings (or any child bicycle seats), and there is no indication that CBP examined that merchandise prior to liquidation. As a result, plaintiff cannot establish this element of treatment.

Therefore, whether considering Kent's own entries, or third-party entries, Kent failed to demonstrate a treatment of classifying child bicycle seats in heading 9401.

## CONCLUSION

For the foregoing reasons and the reasons set forth in our cross-motion for summary judgment and reply, this Court should deny judgment for plaintiff as to count 3 of its complaint, and enter judgment for defendant United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney in Charge

By:   /s/Aimee Lee
AIMEE LEE
Assistant Director

/s/ Monica P. Triana
MONICA P. TRIANA
Trial Attorney
Civil Division, Dept. of Justice
Commercial Litigation Branch
International Trade Field Office
26 Federal Plaza, Room 346
New York, New York 10278
*Attorneys for Defendant*
Tel. No. 212-264-9240 or 9230

Of counsel:
Yelena Slepak, Esq.
Office of Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

15

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. LEO M. GORDON, SENIOR JUDGE

| | |
|---|---|
| KENT INTERNATIONAL, INC., | : |
| Plaintiff, | : Court No. 15-00135 |
| v. | : |
| UNITED STATES, | : |
| Defendant. | : |

CERTIFICATE OF COMPLIANCE PURSUANT TO USCIT
STANDARD CHAMBER PROCEDURE 2(B)

I, Monica P. Triana, trial counsel in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the foregoing brief, relying upon the Microsoft Word count feature of the word processing program used to prepare the brief, certify that this brief complies with the type-volume limitation under USCIT Standard Chamber Procedure 2(B) and contains 4,654 words.

/s/ Monica P. Triana