UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. LEO M. GORDON, SENIOR JUDGE

| | |
|---|---|
| KENT INTERNATIONAL, INC., : | |
| : | |
| Plaintiff, : | Court No. 15-00135 |
| : | |
| v. : | |
| : | |
| UNITED STATES, : | |
| : | |
| Defendant. : | |

# DEFENDANT'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL SUBMISSION

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

AIMEE LEE
Assistant Director

MONICA P. TRIANA
Trial Attorney
Civil Division, Dept. of Justice
Commercial Litigation Branch
International Trade Field Office
Of Counsel:                          26 Federal Plaza, Room 346
Yelena Slepak, Esq.                  New York, New York 10278
Office of Assistant Chief Counsel    Tel. No. 212-264-9240 or 9230
International Trade Litigation       *Attorneys for Defendant*
U.S. Customs and Border Protection

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

    I.    KENT CANNOT ESTABLISH THE EXISTENCE OF A TREATMENT
        WITHOUT CONSIDERATION OF THE BYPASS ENTRIES ...................................... 2

        A.  There Was No Treatment Previously Accorded To Kent ............................ 2

        B.  The Two-Year Time Period For Kent's Treatment Claim Is
            The Two Years Preceding The Entry That Did Not Receive The Treatment .............. 4

    II.   CBP'S ACTIONS WITH RESPECT TO MERCHANDISE IMPORTED
        BY THIRD PARTIES DO NOT CONSTITUTE A TREATMENT ................................ 6

CONCLUSION ........................................................................................................................... 7

# TABLE OF AUTHORITIES

**Cases**

*Am. Fiber & Finishing v. United States,*
   121 F. Supp. 3d 1273 (Ct. Int'l Trade 2015) ........................................................................ 4, 5

*Kent Int'l Inc. v. United States,*
   393 F. Supp. 3d 1218 (Ct. Int'l Trade 2019) .......................................................................... 3

*Kent Int'l, Inc. v. United States,*
   264 F. Supp. 3d 1340 (Ct. Int'l Trade 2017) ....................................................................... 6, 7

*Motorola, Inc. v. United States,*
   462 F. Supp. 2d 1367 (Ct. Int'l Trade 2006) ........................................................................ 3, 4

*Motorola, Inc. v. United States,*
   509 F.3d 1368 (Fed. Cir. 2007) ............................................................................................ 3, 4

*Sea-Land Serv., Inc., v. United States,*
   239 F.3d 1366 (Fed. Cir. 2001) ................................................................................................ 5

**Harmonized Tariff Schedule of the United States**

Chapter 87

Heading 8714 ............................................................................................................... 3, 6

Chapter 94

Heading 9401 ............................................................................................................*passim*

**Statutes**

19 U.S.C. § 1625 .......................................................................................................*passim*

**Regulations**

19 C.F.R. § 177.12 .................................................................................................... 2, 4, 6

**Other Authorities**

67 Fed. Reg. 53483 (August 16, 2002). ............................................................................ 5

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. LEO M. GORDON, SENIOR JUDGE

|  |  |  |
|---|---|---|
| KENT INTERNATIONAL, INC., | : | |
| Plaintiff, | : | Court No. 15-00135 |
| v. | : | |
| UNITED STATES, | : | |
| Defendant. | : | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL SUBMISSION**

Defendant, United States (Government), respectfully submits this response to plaintiff's, Kent International Inc. (Kent or plaintiff), post-remand supplemental brief. ECF No. 74.

## INTRODUCTION

Plaintiff, in its recent submission, reiterates many of the arguments made previously, to which the Government has already responded. ECF Nos. 55, 59, 75. Like prior submissions, plaintiff fails to articulate how incorrect decisions made at a single port of entry (Port of New York/Newark) can constitute a two-year consistent application of a decision "on a national basis," as to the classification of its own child bicycle seats, given the facts at issue. Indeed, plaintiff asked U.S. Customs and Border Protection (Customs or CBP) to suspend its decision on protests covering Kent's child bicycle seats made at another port of entry during the time period plaintiff identifies. And, this Court should reject any treatment claim based on classification of merchandise made by Kent's competitors, as there is no evidence – and plaintiff points to no evidence – that CBP liquidated third-party entries of child bicycle seats in heading 9401.

Because plaintiff cannot establish a treatment of classifying either Kent's or third-party importers' child bicycle seats in heading 9401, the requirement of a two-year time period

"immediately preceding the claim of treatment" is irrelevant.  Even if the Court found that a treatment existed, it would not apply to entries made before November of 2010, when plaintiff claims the consistent two-year pattern of action ended.  Indeed, plaintiff is not entitled to relief under 19 U.S.C. § 1625(c) for an entry made prior to the time a cause of action accrues.

## ARGUMENT

I.  **KENT CANNOT ESTABLISH THE EXISTENCE OF A TREATMENT WITHOUT CONSIDERATION OF THE BYPASS ENTRIES**

### A. There Was No Treatment Previously Accorded To Kent

As stated in our prior submission, discounting the bypass entries at the Port of Long Beach, Kent still cannot establish a treatment of classifying its child bicycle seats in heading 9401.  Indeed, there was no CBP determination that was consistently applied "on a national basis as reflected in liquidations of entries or reconciliations or other Customs actions with respect to all or substantially all of [Kent's] Customs transactions . . ."  19 C.F.R. § 177.12(c)(1)(i)(C).  Instead, a single port of entry made erroneous determinations in 2008 and 2010, contrary to a binding a ruling and contrary to law.  Plaintiff asserts that "because no Customs office anywhere in the United States between August 2008 and November 2010 made any actual determination reaching a different classification" that the erroneous determinations at the Port of New York/Newark satisfied the "national basis" requirement.  Pl. Supp. at 2.  Not so.

The Court should not consider in a vacuum whether a single port's actions can alone bind CBP pursuant to 19 U.S.C. § 1625(c)(2).  The facts here are complex, and the regulation requires consideration of "all relevant factors" in this "case-by-case" analysis.  19 C.F.R. § 177.12(c)(1)(ii).  Here, entries were also made at the Port of Long Beach, and some were liquidated and protested during the time period plaintiff identifies.  Gov't Supp. at 7-8.  That no other port upheld the liquidated classification of the merchandise in a heading other than 9401

2

from August of 2008 to November 2010 was the result of plaintiff's request that the Port of Long Beach suspend decision on certain protests while it awaited a decision on its Application for Further Review as to entries made at the Port of New York/Newark.  Kent neither identifies nor addresses this fact.  Despite the Port of New York/Newark granting Kent's pending protests, the Port of Long Beach did not.  Indeed, shortly after the Port of New York/Newark granted Kent's protests, the Port of Long Beach notified Kent that it intended to deny the protests and classify the merchandise in heading 8714, in accordance with the binding 2005 ruling.[1]  *Id.*  Kent's own conduct effectively limited CBP's actions to those taken at the Port of New York/Newark.  These facts cannot form the basis of a treatment claim.

Although plaintiff contends that "the 14 protest and nine PEA approvals at Newark were clearly not the mistaken or misinformed actions of a rogue port," Pl. Supp. at 2, the Port of New York/Newark was the only port of entry to make such a determination, and it was contrary to the 2005 binding ruling.  Tellingly, it was also contrary to the proper classification that was ultimately found to be correct by this Court.  *Kent Int'l Inc. v. United States*, 393 F. Supp. 3d 1218 (Ct. Int'l Trade 2019).  Plaintiff is, however, seeking to bind CBP to classification of all of its Long Beach entries in heading 9401 simply because the Port of New York/Newark made incorrect determinations.

Moreover, that the determinations made by the Port of New York/Newark may be consistent with rulings issued to third parties, Pl. Supp. at 2, is simply not relevant to a treatment claim under section 1625(c).  *Motorola, Inc. v. United States*, 462 F. Supp. 2d 1367, 1379-81 (Ct. Int'l Trade 2006); *Motorola, Inc. v. United States*, 509 F.3d 1368, 1372 (Fed. Cir. 2007)

---

[1] Kent was obligated under the duty of "reasonable care" to enter its merchandise according to the binding 2005 Kent Ruling, just as plaintiff observes Bell Sports, Todson and Britax had the same duty to enter their merchandise in accordance with their respective rulings. Pl. Supp. at 13.

3

(consideration of rulings is precluded in a 19 U.S.C § 1625(c)(2) treatment analysis.)

Because there was no actual determination that was consistently applied "on a national basis" as to Kent's merchandise during any time period, Kent cannot establish a treatment.

### B. The Two-Year Time Period For Kent's Treatment Claim Is The Two Years Preceding The Entry That Did Not Receive The Treatment

As stated in our prior submissions, to be entitled to relief pursuant to 19 U.S.C. § 1625(c)(2), the Court must look to the two-year period immediately preceding the entry upon which relief is sought (under section 1625(c)(2)) to determine whether there was a prior consistent pattern of action (here classification in heading 9401). Gov't Supp. at 9-12; 19 C.F.R. § 177.125(c)(1)(i)(C). We agree with plaintiff, however, that the Court's determination on this issue is not dispositive of the case. That is, *if* plaintiff were able to establish that there was a two-year consistent application of a classification decision between August of 2008 and November 2010[2] (which we contend it cannot), we concede that the claim may apply to entries made after that two-year period, until such treatment was revoked. However, 15 of the entries at issue were made before November 2010 – prior to the time plaintiff's asserted treatment claim even accrued – and there is no support for plaintiff's contention that the Court can provide relief under 19 U.S.C. § 1625(c) for any entry that is made prior to the time a cause of action accrues.

The court in *Am. Fiber & Finishing v. United States*, 121 F. Supp. 3d 1273 (Ct. Int'l Trade 2015), held that a "claim," is defined as "[t]he aggregate of operative facts giving rise to a right enforceable by a court," or "the assertion of an existing right." *Id.* at 1283-84. Moreover, a "claim of treatment" is the assertion that a right to relief pursuant to section 1625(c)(2) exists, and it arises on the date an importer first entered merchandise that was not afforded that

---

[2] Plaintiff points to November 2010 as the date CBP "stopped its consistent previous practice of approving Kent's protests." Pl. Supp. at 3. However, not approving a protest – or suspending a protest – is not an action that would trigger a claim for relief. Gov't Supp. at 9-11.

4

treatment. *Id.* at 1285-87.  Therefore, "the two years immediately preceding Plaintiff's claim of treatment are the two years immediately preceding its earliest affected entry." *Id.* at 1287.  Here, the earliest affected entry was in December 2008.  However, there was no consistent pattern of classifying Kent's merchandise in heading 9401 in the two years prior to December 2008.

Plaintiff contends that a treatment can apply to entries that were made before its treatment claim accrued and that we are conflating the issue of when a claim of treatment accrued, with the application of a treatment to entries.  Specifically, plaintiff argues that once a claim of treatment accrues, it applied to all entries that were not yet finally liquidated, including an entry made in December of 2008.  Pl. Supp. at 5-8.  Not only does the statute not provide for such a remedy, it is contrary to the purpose of 19 U.S.C. § 1625(c), *i.e.*, to protect an importer's reliance interest.  As the Federal Circuit observed, the purpose of treatment is "to ensure that the interested public has notice of a proposed change in Customs' policy' . . . and [can] modify any current practices that were based in reliance on [CBP's] earlier policy." *Sea-Land Serv., Inc., v. United States*, 239 F.3d 1366, 1373 (Fed. Cir. 2001)*;* 67 Fed. Reg. 53483, 53491 (Aug. 16, 2002) (Statutory protection may be afforded when Customs' actions "created an impression that could give rise to an expectation as regards future actions by Customs."))  Kent was not relying on a two-year treatment when it made entry in 2008, or when it filed protests in 2009 and 2010, before a claim of treatment even accrued.  Kent also did not and could not have the expectation based upon two years of prior conduct by Customs that its seats would be classified under heading 9401.

Plaintiff further argues that *Am. Fiber & Finishing* only identified a "claim of treatment" and not the entries to which a treatment applies.  Pl. Supp. at 5-6.  Kent attempts to distinguish the case because it did not deal with pending protests.  *Id*.  However, section 1625(c)(2) requires Customs to provide notice and comment prior to making *any* decision (protest or liquidation) that

5

modifies or revokes a treatment "previously accorded." And, a "previously accorded" treatment is based on CBP's conduct for the two years "immediately preceding the claim of treatment." 19 C.F.R. § 177.12(c)(1)(i)(C). Therefore, if a treatment exists, the affected entries will be those *following* the two-year period. There is no right to a treatment enforceable by the Court until a claim accrues. Entries made prior to the time a right to relief has accrued cannot receive the benefit of that treatment.

The last few arguments require little discussion. While it is true that under 19 C.F.R. § 177.12(e)(3) an accrued treatment applies until 60 days after the date of revocation, Pl. Supp. at 6, the regulation does not permit application of a treatment to an entry made prior to the accrual. And, the fact that a ruling letter applies to entries that are unliquidated at the time of issuance, *id.* at 7, is likewise not relevant to this discussion. Neither circumstance is analogous. Finally, plaintiff's assertion that the dates of entry for merchandise in the approved New York/Newark protests (here as early as December 2006) should be considered the beginning of the two-year consistent pattern of action is incorrect. *Id.* at 11-12. The actions that the Court must consider in the treatment claim are not entries made and liquidated in heading 8714, but the protest approvals classifying merchandise in heading 9401, which first occurred in August 2008. Because there was no two-year period of classifying merchandise in heading 9401 for entries made before November 2010, no treatment was previously accorded.

## II. CBP'S ACTIONS WITH RESPECT TO MERCHANDISE IMPORTED BY THIRD PARTIES DO NOT CONSTITUTE A TREATMENT

Plaintiff has not raised any argument with respect to merchandise imported by third parties not already fully addressed in our prior submissions. ECF Nos. 55, 59, 75. To establish that a treatment was previously accorded to child bicycle seats, Kent must prove that "the duty-free rate accorded to other child bicycle seats resulted from an actual determination by Customs .

6

. . that . . . was consistently applied on a national basis" for the two years preceding the claim of treatment. *Kent Int'l, Inc. v. United States*, 264 F. Supp. 3d 1340, 1346 (Ct. Int'l Trade 2017). Kent has not, and cannot, establish facts to support that claim. Indeed, plaintiff admits that there is no evidence that child bicycle seats were entered and classified in heading 9401, stating instead that "[i]t can be *presumed* that the three companies did in fact enter child bicycle safety seats under Heading 9401." Pl. Supp. at 13-14 (emphasis added). No such presumption can be made. Moreover, rulings are not considered in a treatment analysis. Thus, plaintiff's treatment claim with respect to merchandise imported by third parties must fail.[3]

## CONCLUSION

For the foregoing reasons and the reasons set forth in our previous submissions, this Court should enter judgment for defendant United States as to plaintiff's treatment claim.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:   /s/Aimee Lee
      AIMEE LEE
      Assistant Director

      /s/ Monica P. Triana
      MONICA P. TRIANA
      Trial Attorney
      Civil Division, Dept. of Justice
      Commercial Litigation Branch
      International Trade Field Office
      26 Federal Plaza, Room 346
      New York, New York 10278
      Tel. No. 212-264-9240 or 9230

Of counsel:
Yelena Slepak, Esq.
Office of Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

---

[3] Kent's reference to "no change" liquidations, Pl. Supp. at 14, was previously addressed. *See* Gov't MSJ Reply at 16.

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. LEO M. GORDON, SENIOR JUDGE

|  |  |  |
|---|---|---|
| KENT INTERNATIONAL, INC., | : | |
| Plaintiff, | : | Court No. 15-00135 |
| v. | : | |
| UNITED STATES, | : | |
| Defendant. | : | |

CERTIFICATE OF COMPLIANCE PURSUANT TO USCIT
STANDARD CHAMBER PROCEDURE 2(B)

I, Monica P. Triana, trial counsel in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the foregoing brief, relying upon the Microsoft Word count feature of the word processing program used to prepare the brief, certify that this brief complies with the type-volume limitation under USCIT Standard Chamber Procedure 2(B) and contains 2,134 words.

/s/ Monica P. Triana