**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. LEO M. GORDON, SENIOR JUDGE**

| | | |
|---|---|---|
| KENT INTERNATIONAL, INC., | : | |
| Plaintiff, | : | |
| v. | : | Court No. 15-00135 |
| UNITED STATES, | : | |
| Defendant. | : | |

# PLAINTIFF'S RESPONSE BRIEF
# AFTER REMAND

Philip Yale Simons
Jerry P. Wiskin
Patrick C. Reed
SIMONS & WISKIN
*Attorneys for Plaintiff*

98 Craig Road
Manalapan, NJ 07726
Tel (732) 316-2300

Dated: April 12, 2022

**TABLE OF CONTENTS**

A.  Kent Has Established A Treatment Based On Its Own Entries. . . . . . . . . . . . . . 1

  1.  The Federal Circuit's Mandate Makes The Long Beach Entries Irrelevant . . 1

  2.  The "Seat" Treatment Resulted From The Change In Customs' Position . . 2

  3.  Customs' Protest Suspension Procedure Does Not Disqualify A Treatment Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.  The "Seat" Treatment Applies To All Kent's Entries In Issue . . . . . . . . . . . . . . . 4

III.  Kent Has Established A Treatment Based On All Importers' Entries . . . . . . . . . 6

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

# TABLE OF AUTHORITIES

Cases:

*Ambassador Div. of Florsheim Shoe v. United States*, 748 F.2d 1560, 1565 (Fed. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*American Fiber & Finishing, Inc. v. United States*, 121 F. Supp.3d 1273 (Ct. Int'l Trade 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Banks v. United States*, 741 F.3d 1268 (Fed. Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . 2

*Briggs v. Pa. R. Co.*, 334 U.S. 304 (1948). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Kent International, Inc. v. United States,* 17 F.4th 1104 (Fed. Cir. 2021) . . . . . . . . . 1,2

*Peerless Clothing Int'l, Inc. v. United States*, 602 F. Supp 2d 1309 (Ct. Int'l Trade 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Haggar Apparel Co.*, 526 U.S. 380 (1999) . . . . . . . . . . . . . . . . . . . 5-6

Statutes:

Harmonized Tariff Schedule of the United States —

    Heading 9401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

19 U.S.C. § 1625(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Other Authorities:

19 C.F.R. —

    § 174.13(a)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,4

    § 177.9(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    § 177.12(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,4,5

    § 177.12(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    § 177.12(c)(1)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Customs Service, *19 C.F.R. Part 177: Administrative Rulings*, T.D. 02-49, 67 Fed.
    Reg. 53483 (Aug. 16, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2

Customs Ruling HQ H024672 (Customs HQ Mar. 27, 2008) . . . . . . . . . . . . . . . . . . . . . 3

**STATEMENT**

Plaintiff Kent International, Inc. ("Kent") submits this Response Brief After Remand in response to the Government's Post-Remand Supplementary Brief. Kent asks the Court to grant summary judgment for Kent. This will give Kent the same tariff treatment as all other importers of similar child safety seats for bicycles between 2007 and 2014.

**ARGUMENT**

**A.     Kent Has Established A Treatment Based On Its Own Entries.**

***1. The Federal Circuit's Mandate Makes The Long Beach Entries Irrelevant.***
The Federal Circuit held that the bypass liquidations of Kent's entries at Long Beach cannot be considered in a treatment claim, and it remanded the case for evaluation of Kent's treatment claim without considering the Long Beach bypass liquidations. *Kent International, Inc. v. United States,* 17 F.4th 1104 (Fed. Cir. 2021). The bypass liquidations are to be given "*no weight whatsoever* ...." *Id.* at 1108 (quoting 19 C.F.R. § 177.12(c)(1); italics added by the Federal Circuit).

The Government's Supplementary Brief concedes that Kent has established all the elements of its section 1625(c) treatment claim except for the requirement that Customs must have applied the treatment "on a national basis." The Government also concedes that the "on a national basis" requirement means that a treatment may "not result from a geographically narrow application of a determination that is *different from the action taken by Customs ... at other locations*." Customs Service, *19 C.F.R. Part 177: Administrative Rulings*, T.D. 02-49, 67 Fed. Reg. 53483, 53494 (Aug. 16, 2002) (italics added). The Government concedes further that, under this standard, an importer is not required to show

that Customs applied the treatment at more than one port, only that Customs did not make any actual determination at another port that is different from the claimed treatment.

The Government then argues that, under this standard, there was "action taken by Customs ... at other locations" that differed from Kent's claim "seat" treatment at Newark. The different action at another location that the Government identifies is nothing less than — the bypass liquidations at Long Beach that the Federal Circuit prohibited from being considered and required to be given "no weight whatsoever." The Government pays lip service to the holding that the Long Beach bypass liquidations cannot be considered, but it urges that the fact these entries were made "is relevant."

The Government's argument that the Long Beach bypass liquidations cannot be considered but are somehow nevertheless still "relevant" is sophistry. Since the entries cannot be considered, they are irrelevant. The Government's argument trying to make the bypass entries "relevant" violates the Federal Circuit's mandate of "no weight whatsoever." "The mandate rule, encompassed by the broader law-of-the-case doctrine, dictates that 'an inferior court has no power or authority to deviate from the mandate issued by an appellate court.'" *Banks v. United States*, 741 F.3d 1268, 1276 (Fed. Cir. 2014) (citing *Briggs v. Pa. R. Co.*, 334 U.S. 304, 306 (1948)).

***2. The "Seat" Treatment Resulted From The Change In Customs' Position.*** In its assertion that "a single port made erroneous determinations" (Gov't Supp Br. at 6), the Government is in denial of reality. The reality is that Customs changed its position on the classification of child seats for bicycles in 2007. The National Import Specialists Office, not Port Newark, issued the "seat" rulings to Bell Sports in 2007, Todson in 2009, and Britax in 2011. The Newark decisions on Kent's protests were made in consultation with the

National Import Specialists Office, which agreed with the "seat" classification, and Customs Headquarters, which did not rule on the matter because Newark agreed with Kent. The approvals of Kent's protests in effect waived the regulation under which the discredited 2005 ruling letter "is binding on all Customs personnel" (19 C.F.R. § 177.9(a)(1)), but that regulation is intended to protect importers and the waiver did not prejudice Kent's or anyone else's rights.

***3. Customs' Protest Suspension Procedure Does Not Disqualify A Treatment Claim.*** The Government argues that, somehow, Kent should be barred from asserting a treatment claim because, in its protests at Long Beach, Kent (pursuant to 19 C.F.R. § 174.13(a)(7)) requested Customs to decide the Long Beach protests in accordance with Kent's earlier lead protest and application for further review filed at Newark. In view of Kent's request, Customs followed its long-established procedure for handling multiple related protests: namely, Customs suspended disposition of the Long Beach entries pending resolution of Kent's lead protest and application for further review.

Contrary to what the Government's brief seems to imply, Customs' protest suspension procedure is a long-established procedure, adopted for the sound administration of the law, for handling a series of related protests in an orderly manner. *See, e.g.,* Customs Ruling HQ H024672 (Mar. 27, 2008) (explaining that the first protest should be designated the "lead" protest and other related protests should be suspended).

Equally important, Customs' protest suspension procedure was already long-established when Customs promulgated the treatment regulation (19 C.F.R. § 177.12(c)). Customs knew very well at the time that the protest suspension procedure could require an importer's protests at a second port to be suspended pending a decision on a lead

protest at the first port. In drafting the treatment regulation, Customs could very well have included a prohibition on treatment claims based on protest approvals where the importer has undecided protests suspended at another port. But Customs did not include such a prohibition. *See* 19 C.F.R. § 177.12(c)(1)(iii) (stating several reasons for not finding a treatment, but not including protest suspension at a different port). In the absence of any such prohibition, the regulation allows a treatment claim to be based on protest approvals at one port even though protests are suspended at another port.

The Government's argument would create a catch-22 for importers. Under the Government's argument, an importer with entries at multiple ports cannot establish a protest-based treatment claim unless it has protests approved at more than one port, but the importer cannot obtain approvals of related protests at more than one port because of Customs' protest suspension procedure. Instead, the protest suspension procedure (based on 19 C.F.R § 174.13(a)(7)) and the treatment regulation (19 C.F.R. § 177.12(c)) are *in pari materia.* Therefore, contrary to the Government's catch-22 argument, an "intent to have them work harmoniously together, and neither to frustrate the other, or partially repeal it, is very much to be inferred." *Ambassador Div. of Florsheim Shoe v. United States*, 748 F.2d 1560, 1565 (Fed. Cir. 1984).

II.   **The "Seat" Treatment Applies To All Kent's Entries In Issue.**

The Government's argument on the so-called "two-year issue" boils down to a simple idea. According to the Government, an accrued treatment should not apply to pending undecided protests that were filed before the treatment accrued. In fact, the Government has no legal authority supporting its position.

The Government concedes that, if Kent's claim of treatment accrued in November 2010, it applies to the 31 entries in this case filed after November 2010. The Government also appears to concede that the treatment applies to the 7 entries whose liquidations Kent protested after November 2010. *See* Gov't Supp. Br. at 11 (stating that Kent could not have relied on the 2008-2010 treatment when it filed a protest in 2009). The Government is left arguing about the 7 entries against whose liquidations Kent protested before November 2010.

The Government's Supplementary Brief does not take into consideration the legal authorities set out in Kent's Supplementary Brief. *See* Kent's Supp. Br. at 3-8. Under the treatment regulation (19 C.F.R. § 177.12(c)), an accrued treatment is a binding administrative precedent that applies to all pending liquidations, all pending protests, and all future entries, until the treatment is validly revoked prospectively. The Government tries to invoke *American Fiber & Finishing, Inc. v. United States*, 121 F. Supp.3d 1273 (Ct. Int'l Trade 2015). But *American Fiber* only decided when a claim of treatment accrues. Nothing in *American Fiber* says that an accrued treatment does not apply to an entry where a protest against the entry's liquidation was pending and undecided when the treatment accrued. The Government has not cited any legal authority supporting its argument that an accrued treatment does not apply to entries whose liquidations were subject to pending protests when the treatment accrued. The Court should reject the Government's invitation to substitute a novel judge-made standard for the provisions of the Customs regulation. *See United States v. Haggar Apparel Co.*, 526 U.S. 380, 385 (1999) (finding reversible

error where the lower court "declined to treat the regulation as controlling" and instead "relied on a detailed analysis stemming from [judicial case law].")

## III. Kent Has Established A Treatment Based On All Importers' Entries.

The rulings issued to third parties (Bell, Todson, and Britax) and those companies' entries under heading 9401 have fundamental importance in this case because they are evidence that Customs changed its position on the classification of child seats for bicycles.

The third parties' entries were made at numerous ports of entry and clearly satisfy the "on a national basis" requirement. Todson alone made at least 100 entries at a total of eight ports. Todrys Aff't Ex. C [ECF No. 51-3]; Plaintiff's Ex. J. [ECF No. 51 # 7].

With regard to the requirement that the goods in other importers' entries must be "substantially identical" to Kent's merchandise, the Government concedes that Kent's imported child bicycle seats are substantially identical to the merchandise in the Bell, Todson, and Britax ruling letters. It appears to argue, however, that the merchandise that the three companies actually imported under HTSUS heading 9401 might not be same as the merchandise in the three ruling letters. The Government's position rests on the implausible premise that not one of the companies' hundreds of entries under heading 9401 includes a single child bicycle seat. It is inconceivable that the companies that received classification rulings from Customs did not import any bicycle safety seats between 2007 and 2014. Under the doctrine of reasonable care these companies were required to use the heading 9401 classification for their child bicycle seats.

Furthermore, the evidence establishes that Todson only imported child bicycle seats during this period. Todrys Aff't ¶ 6 [ECF No. 51-3]. Although the Government objected to

the Todrys affidavit, the Government did not seek to obtain further discovery regarding the affidavit under USCIT R. 56(d).

As for the requirement that the heading 9401 "seat" classification must been applied in "actual determinations" by Customs, the three other importer's entries were reported as "no change" liquidations. *See* Plaintiff's Ex. J (Todson), Ex. K (Bell) & Ex. L (Britax) [ECF No. 51 #7 & #8]. *Peerless Clothing Int'l, Inc. v. United States*, 602 F. Supp 2d 1309, 1318-19 (Ct. Int'l Trade 2009), held that "no change" liquidations, which are not the same as bypass liquidations, qualify as Customs "actions" that must be considered in a treatment claim.

## CONCLUSION

For all the foregoing reasons and the reasons set out in all its previous briefs, Plaintiff Kent International, Inc. respectfully requests the Court to grant summary judgment for Kent and hold that the imported child bicycle seats liquidated under heading 8417 are properly classified in heading 9401, HTSUS, by operation of 19 U.S.C. § 1625(c).

    Respectively submitted,

    SIMONS & WISKIN
    *Attorneys for Kent International, Inc.*

    By: /s/ *Philip Yale Simons*
       Philip Yale Simons
       Jerry P. Wiskin
       Patrick C. Reed

    98 Craig Road
    Manalapan, NJ 07726
    Tel (732) 316-2300
Dated: April 12, 2022    Fax (732) 316-2365

**UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. LEO M. GORDON, SENIOR JUDGE**

| | | |
|---|---|---|
| KENT INTERNATIONAL, INC., | : | |
| Plaintiff, | : | |
| v. | : | Court No. 15-00135 |
| UNITED STATES, | : | |
| Defendant. | : | |

CERTIFICATE OF COMPLIANCE WITH PAGE/WORD LIMIT

I, Patrick C. Reed, counsel to Simons & Wiskin, attorneys for plaintiff Kent International, Inc., certify that the foregoing Plaintiff's Response Brief After Remand, which consists of 7 numbered pages (not including cover page, table of contents, and table of authorities), complies with the page/word limit of 7 pages set out in the Court's Scheduling Order dated February 23, 2022 [ECF No. 73]. Relying on the word count of the word-processing system used to prepare the brief, I further certify that the brief contains 1898 words.

/s/ *Patrick C. Reed*

Patrick C. Reed

SIMONS & WISKIN
98 Craig Road
Manalapan, NJ 07726
Tel (732) 316-2300
Fax (732) 316-2365
*Attorneys for Plaintiff*

Dated: April 12, 2022