Slip Op. 23-42

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| KENT INTERNATIONAL, INC., | |
| Plaintiff, | Before: Leo M. Gordon, Judge |
| v. | Court No. 15-00135 |
| UNITED STATES, | |
| Defendant, | |

### OPINION

[Plaintiff's motion for summary judgment granted; Defendant's cross-motion for summary judgment denied.]

Decided:  March 24, 2023

Patrick C. Reed, Simons & Wiskin of Manalapan, N.J., argued for Plaintiff Kent International, Inc.  With him on the briefs were Philip Yale Simons and Jerry P. Wiskin.

Monica P. Triana, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., argued for Defendant United States. With her on the briefs were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, Justin R. Miller, Attorney-in-Charge International Trade Field Office, and Aimee Lee, Assistant Director.  Of counsel on the brief was Yelena Slepak, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection of New York, N.Y.

Gordon, Judge: This action involves a challenge by Plaintiff Kent International, Inc.

("Kent") to the denial of a protest by U.S. Customs and Border Protection ("Customs" or

"CBP") regarding the classification of Kent's "WeeRide" child safety seats for bicycles

("subject merchandise") under heading 8714 of the Harmonized Tariff Schedule of the

United States ("HTSUS").  The action has been the subject of five prior court decisions,

the latest of which remanded this matter for further consideration of whether the treatment

provision in Section 625(c) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1625(c),[1]

governs the classification of the subject merchandise.  See <u>Kent Int'l, Inc. v. United States</u>,

17 F.4th 1104 (Fed. Cir. 2021) ("<u>Kent V</u>"); <u>see also</u> <u>Kent Int'l, Inc. v. United States</u>, 44 CIT

___, 466 F. Supp. 3d 1361 (2020) ("<u>Kent IV</u>") (denying Kent's motion for summary

judgment on treatment, and established and uniform practice ("EUP") claims);

<u>Kent Int'l, Inc. v. United States</u>, 43 CIT ___, 393 F. Supp. 3d 1218 (2019) ("<u>Kent III</u>")

(ruling for Defendant on merits of classifying Plaintiff's child bicycle safety seats under

HTSUS heading 8714 as bicycle accessories); <u>Kent Int'l, Inc. v. United States</u>, 41 CIT

___, 26 F. Supp. 3d 1340 (2017) ("<u>Kent II</u>") (denying Defendant's motion to dismiss Kent's

treatment and EUP claims); <u>Kent Int'l, Inc. v. United States</u>, 40 CIT ___, 161 F. Supp. 3d

1340 (2016) ("<u>Kent I</u>") (addressing various procedural matters).  In <u>Kent V</u>, the U.S. Court

of Appeals for the Federal Circuit ("Court of Appeals") upheld this Court's decision on

Kent's EUP claim, but vacated and remanded the denial of its treatment claim.

Now before the court are the parties' renewed cross-motions for summary

judgment on the remanded issue.  <u>See</u> Pl.'s Post-Remand Suppl. Br. ("Pl.'s PR Br."), ECF

No. 74; Def.'s Suppl. Mem. of Law in Further Support of its Mot. for Summ. J. as to

Count 3 of Compl., ECF No. 75 ("Def.'s PR Br."); Pl.'s Resp. Br. After Remand, ECF

No. 78 ("Pl.'s PR Resp."); Def.'s Resp. to Pl.'s Suppl Submission, ECF. No. 77 ("Def.'s

PR Resp."); <u>see also</u> Pl.'s Amended Mot. for Summ. J., ECF No. 52 ("Pl.'s Br.");

Def.'s Cross-Mot. for Summ. J. and Opp. to Pl.'s Mot. for Summ. J., ECF No. 55

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2018 edition.

("Def.'s Br."); Pl.'s Reply & Resp. to Def.'s Cross-Mot. for Summ. J., ECF No. 58-2 ("Pl.'s Resp."); Def.'s Reply in Supp. of Cross-Mot. for Summ. J., ECF No. 59 ("Def.'s Reply").   Underlying this action is Customs' decision to classify the subject merchandise as "Parts and accessories of vehicles of heading 8711 to 8713: . . .  Other: . . .  Other" under HTSUS subheading 8714.99.80, at a 10% duty rate.  Plaintiff contends that Customs violated the treatment provision in § 1625(c), and that the subject merchandise is classifiable as "Seats. . .  Other" under HTSUS subheading 9401.80, duty-free.  The court has jurisdiction pursuant to 28 U.S.C. § 1581(a).  The parties do not dispute the material facts; therefore, this matter is again ripe for summary judgment.  For the reasons set forth below, the court grants Plaintiff's motion for summary judgment and denies Defendant's cross-motion for summary judgment.

## I. Background

The court presumes familiarity with the prior decisions and the undisputed facts in this matter.  <u>See generally</u> Plaintiff's Statement of Material Facts Not in Dispute, ECF No. 51-4 ("Pl.'s Facts Stmt."); Defendant's Response to Plaintiff's Statement of Material Facts, ECF No. 55-2 ("Def.'s Resp. to Facts"); Defendant's Statement of Undisputed Material Facts, ECF No. 55-1 ("Def.'s Facts Stmt."); Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, ECF No. 58-1 ("Pl.'s Resp. to Facts").  To aid the reader, the following is a recap of the relevant undisputed facts.

## A. Newark Entries

In August 2005, Customs issued ruling NY L86862 ("2005 Ruling") classifying Kent's child safety seats for bicycles under HTSUS heading 8714.99.80.  Pl.'s Facts Stmt. ¶ 1; Def.'s Resp. to Facts ¶ 1.  Starting in April 2008 through at least October 2010, Kent submitted multiple protests, including two separate applications for further review ("AFRs"), to Customs at the Port of New York/Newark ("Newark Customs"), seeking reclassification and reliquidation under HTSUS heading 9401 of the subject merchandise. See Def.'s Facts Stmt. ¶¶ 8–14; Pl.'s Resp. to Facts ¶¶ 8–14.  Also in October 2010, Kent made requests for post-entry amendments ("PEAs") as to nine unliquidated entries of "bicycle child carrier seats and parts thereof," seeking to amend each entry on the basis that the correct tariff classification was under HTSUS heading 9401.  Def.'s Facts Stmt. ¶ 15; Pl.'s Resp. to Facts ¶ 15.

Between August 2008 and November 2010, Newark Customs approved Kent's initial 14 protests and the nine PEAs, classifying the subject child safety seats under HTSUS heading 9401, but made no determination on Kent's two Newark AFRs.  Def.'s Facts Stmt. ¶¶ 8–15; Pl.'s Resp. to Facts ¶¶ 8–15.  Plaintiff continued to make entries of its merchandise with Newark Customs through 2015.  Def.'s Facts Stmt. ¶ 16; Pl.'s Resp. to Facts ¶ 16.  Beginning with Kent's protest covering entries made in December 2010, Newark Customs stopped granting, and instead began suspending consideration of, Kent's protests challenging the classification of its child safety seats under HTSUS heading 8714.  Def.'s Facts Stmt. ¶ 18; Pl.'s Resp. to Facts ¶ 18.

### B. Long Beach Entries

Kent also made 45 entries of its child safety seats with Customs at the Port of Long Beach ("Long Beach Customs") between December 2008 and March 2014.  These entries were liquidated via the "bypass"[2] procedure between October 2009 and February 2015 under HTSUS heading 8714.  <u>See</u> Def.'s Facts Stmt. ¶ 20; Pl.'s Resp. to Facts ¶ 20.  Kent then filed 17 protests, all of which were subsequently denied, covering those 45 entries.  <u>See</u> Def.'s Facts Stmt. ¶ 21; Pl.'s Resp. to Facts ¶ 21.  The 17 protests (and the attendant entries) constitute the res of this action.

For several protests filed in 2009 and 2010, Kent requested that Long Beach Customs suspend its consideration of them until CBP made a determination on the second AFR filed with Newark Customs.  Def.'s Facts Stmt. ¶ 22; Pl.'s Resp. to Facts ¶ 22.  Despite the 2010 approval of Kent's protests by Newark Customs, including the protest in which Kent filed its second AFR, Long Beach Customs informed Kent in early 2011 that CBP planned to deny the pending protests and uphold the classification of the subject merchandise under HTSUS heading 8714, consistent with the 2005 Ruling.  Def.'s Facts Stmt. ¶¶ 23, 24; Pl.'s Resp. to Facts ¶¶ 23, 24.  In April 2011, Kent filed another protest, along with a third AFR ("April 2011 AFR"), with Long Beach Customs regarding the subject merchandise.  Def.'s Facts Stmt. ¶ 25; Pl.'s Resp. to Facts ¶ 25.

---

[2]  CBP's bypass liquidation procedure accepts entries "as entered" by the importer. <u>See, e.g.</u>, <u>Brother Int'l Corp. v. United States</u>, 27 CIT 1, 9, 46 F. Supp. 2d 1318, 1326 (2003).

In February 2015, in response to the April 2011 AFR, CBP issued HQ H170637

("2015 Ruling"), determining that "Kent's child bike seats are properly classified under

heading 8714, HTSUS, as accessories to bicycles," and also denied, among other things,

Kent's claims that Customs violated "a treatment previously accorded."[3]   Def.'s Facts

Stmt. ¶ 34; Pl.'s Resp. to Facts ¶ 34.   Customs reasoned that "since an interpretive ruling

which provides CBP's official position on the tariff classification of Kent's merchandise

has been issued to Kent, Kent is precluded from making a claim for treatment."   See Pl.'s

Br. at 8 (quoting 2015 Ruling).

Plaintiff then filed this action, challenging the denial of its protests by Long Beach

Customs.   In Kent IV, the court concluded that Plaintiff had "failed to demonstrate that

Customs denied Kent the benefit of a treatment under § 1625(c) when the agency

classified the subject merchandise under HTSUS heading 8714," and granted

Defendant's cross-motion for summary judgment.   Kent IV, 44 CIT at ___, 466 F. Supp. 3d

---

[3]  Prior to the issuance of HQ H170637, during 2007 to 2011, CBP issued ruling letters to three of Kent's competitors, Bell Sports, Todson, Inc., and Britax Child Safety Inc., classifying their respective child safety seats for bicycles as duty free under HTSUS heading 9401.  See NY Ruling Letter NY N016953 (Sept. 21, 2007) ("Bell Sports Ruling"), NY Ruling Letter N066722 (July 16, 2009) ("Todson Ruling"), and NY Ruling Letter N166197 (June 6, 2011) ("Britax Ruling"); see also Pl.'s Facts Stmt. ¶ 23; Def.'s Resp. to Facts ¶ 23 (Bell Sports Ruling); Pl.'s Facts Stmt. ¶ 21; Def.'s Resp. to Facts ¶ 21 (Todson Ruling); Pl.'s Facts Stmt. ¶ 22; Def.'s Resp. to Facts ¶ 22 (Britax Ruling). In June 2014, following notice and comment, Customs issued ruling HQ H180103 revoking the Bell Sports, Todson, and Britax rulings.  Def.'s Facts Stmt. ¶ 33; Pl.'s Resp. to Facts ¶ 33.  In HQ H180103, Customs determined, consistent with the 2005 Ruling, that "the child bicycle seat designed for attachment to an adult bicycle is classified in heading 8714, HTSUS," dutiable at 10 percent ad valorem.  Id.  This revocation was subsequently published in the Customs Bulletin and Decisions, with an effective date of September 22, 2014.  Id.

at 1369–70.  That decision was based, in relevant part, on this Court's consideration of the significance of the requirement in 19 C.F.R. § 177.12(c) of consistent classification on a national basis vis-à-vis the inconsistent position taken by Long Beach Customs in classifying the subject entries not under heading 9401, but under heading 8714.  Id. at ___, 466 F. Supp. 3d at 1367.   Kent V reversed Kent IV because the Long Beach entries were liquidated via the bypass procedure, and therefore, could not serve as a basis of "a treatment previously accorded" under § 177.12(c)(1)(ii).  Kent V, 17 F.4th at 1110.

## II. Standard of Review

The court reviews Customs' protest decisions de novo.  28 U.S.C. § 2640(a)(1).  USCIT Rule 56 permits summary judgment when "there is no genuine issue as to any material fact."  USCIT R. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  In deciding whether material facts are in dispute, the evidence must be considered in the light most favorable to the non-moving party, drawing all reasonable inferences in its favor.  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Anderson, 477 U.S. at 261 n.2.

## III. Legal Framework

19 U.S.C. § 1625 governs the promulgation of interpretative rulings and decisions by Customs.  In general, a ruling letter represents CBP's official position with respect to the particular transaction or issue described in the ruling.  It is binding on all CBP personnel until modified or revoked, and is effective on the date issued.  It may be applied

to all entries that are unliquidated, or other transactions with respect to which Customs has not taken final action as of the date of issuance.  See 19 C.F.R. § 177.9(a).

Section 1625(c) provides that an interpretative ruling, which (1) modifies or revokes a prior interpretive ruling or decision in effect for at least 60 days, or (2) has the effect of modifying "a treatment previously accorded" by Customs to substantially identical transactions, shall take effect 60 days after publication following a notice and comment period.  19 U.S.C. § 1625(c).  What gives rise to "a treatment previously accorded by [Customs] to substantially identical transactions" is not defined in the statute.  However, the implementing regulation, 19 C.F.R. § 177.12(c), provides a three-pronged test for establishing what is meant by that language.  Specifically, the regulation requires evidence sufficient to establish that:

> (A) There was an actual determination by a Customs officer regarding the facts and issues involved in the claimed treatment;
> (B) The Customs officer making the actual determination was responsible for the subject matter on which the determination was made; and
> (C) Over a 2-year period immediately preceding the claim of treatment, Customs consistently applied that determination on a national basis as reflected in liquidations of entries or reconciliations or other Customs actions with respect to all or substantially all of that person's Customs transactions involving materially identical facts and issues.

19 C.F.R. § 177.12(c)(1)(i).

Customs engages in a case-by-case analysis to determine whether particular transactions demonstrate sufficient review by Customs to form the basis of "a treatment previously accorded."  Id. § 177.12(c)(1)(ii).  Specifically, CBP focuses on past transactions to see "whether there was an examination of the merchandise (where applicable) by Customs or the extent to which those transactions were otherwise

reviewed by Customs to determine the proper application of the Customs laws and regulations." Id.  In so doing, no weight is afforded "to informal entries and to other entries or transactions which Customs, in the interest of commercial facilitation and accommodation, processes expeditiously and without examination or Customs officer review."  Id.  The person seeking the benefit of "a treatment previously accorded" bears the burden of demonstrating the existence of a previous treatment by Customs.  Id. § 177.12(c)(1)(iv).

## IV. Discussion

### Kent's Claim of Treatment

For purposes of 19 U.S.C. § 1625(c)(2), "a treatment previously accorded" flows from, and is a consequence of, a substantially consistent course of meaningful action with respect to the imported merchandise over a period of time.  See, e.g., Kahrs Int'l, Inc. v. United States, 33 CIT 1316, 1353–61, 645 F. Supp. 2d 1251, 1286–92 (2009).  It is CBP's actions, not its position or policy, that determine whether a treatment towards those transactions exists subject to § 1625(c)(2).  See Precision Specialty Metals, Inc. v. United States, 24 CIT 1016, 1043–44, 116 F. Supp. 2d 1350, 1377 (2000).  An importer seeking to establish a treatment must, at a minimum, show Customs formally taking significant action in a particular and consistent manner with respect to the importer's prior transactions.  See id.; see also Administrative Rulings, 67 Fed. Reg. 53,483, 53,489–90 (Customs Service, Aug. 16, 2002) (providing for "a statutory protection against abrupt changes made by Customs without adequate prior notice, particularly where the change is to a ruling or decision issued by Customs, or to a pattern of actions taken by Customs

on import transactions, on which a party has reasonably relied in pursuing its Customs transactions").  A treatment therefore requires a "showing that Customs took a conscious, intentional and knowledgeable action that created an impression that could give rise to an expectation as regards future action by Customs."  Kent V, 17 F.4th at 1119 (quoting 67 Fed. Reg. at 53,491).

The court initially focuses on the first two prongs of the 19 C.F.R. § 177.12(c)(1)(i) test, namely, that there was (1) an actual determination made by a CBP official regarding the claimed treatment and (2) that that official had responsibility for the subject matter over which the determination was made.  Kent argues that Customs established a treatment of classifying Kent's child safety seats as seats under HTSUS heading 9401 by disregarding the contrary 2005 Ruling that had classified the subject merchandise under HTSUS heading 8417.  The heading 9401 treatment, Kent maintains, is reflected in the approval by Newark Customs of 14 protests covering 35 entries between August 2008 and October 2010, plus the PEAs covering nine other entries in November 2010. See Pl.'s Br. at 13.

Kent contends that the approval of these protests and PEAs were the only actual determinations made by Customs on the classification of Kent's merchandise between August 2008 and November 2010.  Plaintiff further argues that no other decisions or actions were taken by CBP anywhere in the country regarding Kent's child safety seats, nor were any other interpretive rulings or decisions made with respect to Plaintiff's merchandise.  See id. at 12–13.

Defendant concedes that there were actual determinations made by responsible CBP officials regarding the subject merchandise.  See Def.'s PR Br. at 7 ("[w]e agree that these were 'actual determinations' by [Newark Customs]").  Given this, the court concludes there is no dispute that actual determinations were made by a CBP officer with responsibility for the classification of the subject merchandise, thus satisfying the first two prongs of § 177.12(c)(1)(i).

The third prong of the § 177.12(c)(1)(i) test focuses on whether there are (1) substantially identical transactions for which there was a claimed treatment (2) on a national basis (3) over a 2-year period immediately preceding the claimed treatment. 19 C.F.R. § 177.12(c)(1)(i)(C).  As to the first element of this prong, the parties do not dispute that Plaintiff's imports involved substantially identical transactions.  See, e.g., Compl. ¶ 5 ("[t]he merchandise in issue is Kent International Inc.'s WeeRide Kangaroo child bicycle seat, which is described on the commercial invoices as a Kangaroo Carrier"); id. at ¶ 48 ("[f]rom August 2008 through November 2010, all of Plaintiff's protests and PEAs on which CBP took action were approved"); Pl.'s Br. at 16 ("[t]he merchandise that was the subject of the Long Beach protests was identical to the merchandise that was the subject of the more-than-two-year Newark Customs treatment, i.e., Kent's child bicycle seats") (referencing Pl's Br. at Ex.1);  see also Def.'s Facts Stmt. ¶ 1 ("This case concerns the tariff classification of the WeeRide Kangaroo Ltd. Center-Mounted Bicycle-Child Carrier (Kangaroo Child Carrier or Carrier)") (referencing Entry Papers; Ex. 1 (sample filed with court)).

The parties, however, diverge on the second and third elements, namely (1) whether the claimed treatment was on a national basis and (2) whether that claimed treatment occurred over a 2-year period immediately preceding the claim.  The term national basis was inserted into the regulation to replace the phrase "a consistent pattern of decisions" as to liquidations of entries or reconciliations "to ensure that a treatment does not result from a geographically narrow application of a determination that is different from the action taken by Customs on that person's substantially identical transactions at other locations."  Administrative Rulings, 67 Fed. Reg. at 53,494.

As Plaintiff previously noted, between August 2008 and November 2010, only Newark Customs, and no other official or office within Customs, made determinations on Kent's protests and PEAs, or took an action regarding the classification of Kent's merchandise.  These determinations consistently approved Plaintiff's claims that the subject merchandise should be classified under HTSUS heading 9401, duty free.  It is Kent's position that the national basis element does not require the treatment to have been previously accorded at more than one port, only that different ports may not take inconsistent actions.  Pl.'s PR Br. at 2.

Defendant disagrees, maintaining that Plaintiff's claimed treatment did not exist on a national basis.  Specifically, Defendant contends that "[d]eterminations made solely at the Port of New York/Newark are not reflective of a CBP determination applied on a national basis."  See Def.'s PR Br. at 7 (notably not citing authority for proposition).  While Defendant concedes that the only actual determinations on Kent's claims occurred between August 2008 and November 2010 at Newark Customs, it argues that this

circumstance resulted from Kent's request that Long Beach Customs suspend consideration of Kent's 2009 and 2010 protests.  See id. at 7–8 (citing Kent IV, 44 CIT at ___, 466 F. Supp. 3d at 1363).  Defendant recognizes that the court is precluded by Kent V from considering the liquidations of the Long Beach entries as they were not "actual determinations" under the regulation.  Nevertheless, Defendant contends that § 177.12(c)(1)(ii) requires the court to consider the fact that there were entries and protests regarding the subject merchandise at a port of entry other than Newark (i.e., Long Beach).  Id. at 8.  Defendant also points out that in early 2011, shortly after the 2010 approvals of Kent's protests and PEAs by Newark Customs classifying Kent's merchandise in HTSUS heading 9401, Long Beach Customs informally notified Kent that its protests would be denied, resulting in the classification of Kent's merchandise under HTSUS heading 8714.  Id. (referencing Kent IV, 44 CIT at ___, 466 F. Supp. 3d at 1363-64).

While the court is cognizant of the existence of Kent's Long Beach entries and protests, it rejects Defendant's arguments that the informal contact between Long Beach Customs and Kent's counsel in early 2011 regarding how CBP would rule in the future on Kent's protests constitutes "action" by Customs under § 177.12(c).  Following the directive in Kent V, this Court cannot afford any weight to CBP's consideration of Kent's Long Beach entries that were liquidated through the bypass procedure.  Consequently, since no other port or office within CBP took a contrary position or action, the court agrees with Plaintiff that the determinations by Newark Customs constitute "action" as contemplated

by the regulation. Thus, the determinations by Newark Customs here satisfy the national basis element of the third prong of the treatment test.

The court now turns to the last element of the third prong, namely, that the claim of treatment must occur over a 2-year period immediately preceding the claim. A "claim" is defined as "[t]he aggregate of operative facts giving rise to a right enforceable by court." Am. Fiber & Finishing, Inc. v. United States, 39 CIT ___, ___, 121 F. Supp. 3d 1273, 1283–84 (2015) ("American Fiber"). Alternatively, a claim can be defined as "the assertion of an existing right." Id. at ___, 121 F. Supp. 3d at 1283. That is different from the administrative mechanism (protest) in which the claim is asserted. Id. at ___, 121 F. Supp. 3d at 1285.

"Inasmuch as a 'claim of treatment' is an assertion of a right, made up of its operative facts, so too is the 2-year period immediately preceding it defined by that assertion and those facts." Id. at ___, 121 F. Supp. 3d at 1284. The court in American Fiber observed that a "claim of treatment" arose on the date an importer first entered merchandise that was not afforded the treatment sought. Id. at___, 121 F. Supp. 3d at 1287. There, the court determined that the date of entry was "the inflection point when Plaintiff's claimed treatment changed." Id. Thus, "the two years immediately preceding Plaintiff's claim of treatment are the two years immediately preceding its earliest affected entry (i.e., the first entry that does not receive the anticipated, relied upon treatment)." Id.

Here, Defendant maintains that Kent first asserted a "claim of treatment" with respect to an entry made at the Port of Long Beach on December 4, 2008 (earliest entry in case). See Def.'s PR Br. at 10 (referencing Protest No. 2704-09-103402). Relying on

a literal reading of <u>American Fiber</u>, Defendant contends that the court must look to the two years immediately preceding the earliest entry at issue to determine whether CBP consistently applied a specific classification determination on a national basis.  It is, in Defendant's view, that earliest entry that is the key to the commencement of the appropriate 2-year period.  Consequently, Defendant argues that "[b]ecause CBP's first action resulting in classification of the merchandise under heading 9401 occurred with the approval of the first protest at [Newark Customs] in August of 2008, only four months prior to its first entry of merchandise on December 4, 2008, Kent cannot satisfy the two-year regulatory requirement as to that entry."  <u>Id.</u> (citing 19 C.F.R. § 177.12(c)(1)(i)(C)).

Kent contends that Defendant's focus on entry dates is misplaced because the claimed treatment in this matter arose from Customs' protest approvals rather than how the entries were initially classified.  Pl.'s PR Br. at 3–4.  Kent argues for application of <u>American Fiber</u> by analogy, and maintains that the relevant 2-year time frame for its claim of treatment is August 2008 through November 2010.  <u>Id.</u> ("The reasoning in <u>American Fiber</u> applies to Kent's case <u>mutatis mutandis</u>, using protest approval dates instead of entry dates.").  Kent explains that this timeframe establishes treatment "based on Kent's own entries and is reflected in 14 protest approvals, resulting in reliquidation of 35 entries, as well as Post-Entry Amendment ('PEA') approvals for nine entries, that classified Kent's child safety seats in HTSUS heading 9401 between August 2008 and November 2010."  <u>Id.</u> at 1.  Kent further notes that "[t]he protest and PEA approvals covering these 44 entries account for every Customs action in the United States in actual, reasoned decisions by a

Customs official that determined the proper application of the law to Kent's merchandise during the two-year period from August 2008 to November 2010." Id. at 1–2.

The court agrees with Plaintiff. The basis for treatment in this matter arises from CBP's grant of Kent's protests rather than how the entries were initially classified. See Oral Argument at 20:35–21:15, ECF No. 80 (Dec. 14, 2022) (Plaintiff arguing for application of American Fiber "by analogy," using protest approvals rather than entries); cf. American Fiber at ___, 121 F. Supp. 3d at 1287; see also Def.'s PR Br. at 7 (acknowledging that "the only 'actual determinations' made [by CBP as to Kent's child safety seats] between August 2008 and November 2010 occurred at the Port of New York/Newark"); Def.'s PR Resp. at 6 ("The actions that the Court must consider in the treatment claim are not entries made and liquidated in heading 8714, but the protest approvals classifying merchandise in heading 9401, which first occurred in August 2008."). Applying the guidance of American Fiber to the circumstances of this matter, the court concludes that the protest and PEA approvals by Newark Customs from August 2008 through November 2010 satisfy the consistent "2-year period" element of the third prong of the treatment test under § 177.12(c)(1)(i)(C).

Plaintiff further contends that November 2010 is the "date for accrual for Kent's claim of treatment" because that is when CBP "stopped its consistent previous practice of approving Kent's protests." See Pl.'s PR Br. at 3–4.[4] Defendant, however, argues that

---

[4] But cf. Pl.'s PR Br. at 3 (recognizing that "[t]he 2015 Headquarters Decision denying Kent's pending protests represents 'an interpretative ruling or decision' [as] it 'effectively modified' the 2008–2010 treatment of classifying Kent's seats as seats." (internal citation omitted)).

"not approving a protest – or suspending a protest – is not an action that [triggers] a claim for relief [under § 177.12(c)]."  See Def.'s PR Resp. Br. at 4 n.2.  On this point, Defendant is correct.  Based on the "look-back" rationale of American Fiber and § 177.12(c)(1)(i)(C), the inflection point for Kent's claim of treatment was February 11, 2015, the date on which Customs Headquarters issued HQ H170637, taking a conscious, intentional, and knowledgeable action by ruling that the proper classification of the subject child safety seats for bicycles was in HTSUS heading 8714.   It is uncontested that from November 2010 until the issuance of HQ H170637 in February 2015 Customs was silent, with no other actions occurring on Kent's merchandise.

As to the period of treatment, § 177.12(c) does not limit consideration of the 2-year treatment period to two consecutive years only.  It is apparent from the regulation that consideration may extend to as many consecutive years as the treatment period covers. Cf. 19 C.F.R. § 177.12(c)(1)(i)(C) ("Over a 2-year period immediately preceding the claim of treatment, Customs consistently applied that determination on a national basis as reflected in liquidations of entries or reconciliations or other Customs actions with respect to all or substantially all of that person's Customs transactions involving materially identical facts and issues.").  In the court's view, there is little doubt that Plaintiff has identified a set of operative facts based on CBP's protest and PEA approvals that give rise to a claim for treatment for the classification of the subject merchandise under HTSUS heading 9401.  Thus, the issuance of the 2015 Ruling that Kent's child bike seats are properly classified under HTSUS heading 8714, as accessories to bicycles, contravened

the prior afforded treatment for Kent's entries for which Customs consistently granted protests for reclassification under heading 9401 since August 2008.

Having established the <u>existence</u> of a treatment, there remains a final issue as to which of Kent's entries may be entitled to the <u>benefit</u> of that treatment.  During oral argument, both Plaintiff and Defendant agreed that if Kent had established a claim of treatment, that claim accrued by November 2010.  <u>See</u> Oral Arg. at 14:07–14:30 ("Since Kent's claim is based on protest approvals, we look to the dates of the protest approvals, and it is in November of 2010 that Customs had consistently approved protests for more than two years."); <u>id.</u> at 1:03:35–1:05:00, 1:07:15–1:07:45 (Government conceding that if court finds existence of treatment here, accrual of treatment would be November 2010).[5]

Plaintiff maintains that "[t]he Government has conceded here and before the Federal Circuit that if Kent has established a claim of treatment at all, the treatment applies to Kent's entries filed after November 2010, which represent the majority of Kent's entries in this case (31 of 45 entries)."  Pl.'s PR Br. at 4 (citing language supporting conclusion from Government's brief on appeal to Court of Appeals as well as Government's initial (pre-appeal) summary judgment reply brief).  "The dispute over applying the 'seat' classification involves, therefore, the 14 entries that were filed before

---

[5] While technically a 2-year period measured from August 2008 would end in August 2010, the court agrees that it is appropriate to consider the period from August 2008 through November 2010 in order to address the full scope of CBP's actions regarding Kent's protests during this (over) 2-year period.  <u>See</u> Pl.'s Facts Stmt. ¶¶ 2–16 (providing a timeline of approvals of Kent's protests and PEAs, of which a large majority occurred in November 2010); Def.'s Resp. to Facts ¶¶ 2–16 (correcting certain typographical errors, but confirming this general timeline).

November 2010 and whose liquidations were not final at that time.  The disputed entries consist of seven entries against whose liquidations Kent filed protests before November 2010, and seven entries against whose liquidations Kent filed protests after November 2010."  Id. at 4–5; see also Pl.'s PR Resp. at 5.[6]

Kent contends that its accrued treatment claim extends to the entries "against whose liquidations Kent protested before November 2010."  Pl.'s PR Resp. at 5.  Kent maintains that "an accrued treatment is a binding administrative precedent that applies to all pending liquidations, all pending protests, and all future entries, until the treatment is validly revoked prospectively."  Id.  This argument is unpersuasive as § 177.12(c)(1)(i)(C) requires a consistent "2-year" period to establish the accrual of treatment.  As noted above, that period is based off of CBP's consistent grant of Kent's protests that concluded in November 2010.  As a result, only Kent's entries that were protested after November 2010, i.e., the 2-year period of consistent Customs' actions in granting Kent's protests since August 2008, qualify for relief under Kent's claim for treatment. Accordingly, the court concludes that Kent has established the existence of a treatment regarding its child safety seats for bicycles that were the subject of protests filed with

---

[6] The court notes that there is an apparent inconsistency in the parties' discussion of these contested entries.  As described above, Plaintiff argues that there are "14 entries that were filed before November 2010" with seven entries protested prior to November 2010, and with seven entries protested after November 2010. Pl.'s PR Br. at 4–5 (emphasis added).  Defendant, however, argues that 15 entries at issue "were made before November 2010 – prior to the time plaintiff's asserted treatment claim even accrued."  Def.'s PR Resp. Br. at 4.  As explained above, because Kent's claim of treatment is predicated on CBP's consistent actions in granting Kent's protests since August 2008, the court concludes that Kent's entries protested after November 2010 qualify for relief under the statutory and regulatory provisions governing "treatment."

Court No. 15-00135                                                           Page 20

Customs after November 2010.  In reaching this conclusion, the court also holds that Customs violated that treatment in issuing the 2015 Ruling without the notice and comment required by 19 U.S.C. § 1625(c).

### IV. Conclusion

For the foregoing reasons, the court concludes that Kent is entitled to a treatment of duty-free entry under heading 9401, HTSUS, for its Long Beach entries that were protested after November 2010 through February 2015 pursuant to 19 U.S.C. § 1625 and 19 C.F.R. § 177.12(c).  Judgment will enter accordingly.



                                                     /s/ Leo M. Gordon
                                                   Judge Leo M. Gordon


Dated: March 24, 2023
          New York, New York